ADRMOP, CLOSED, E-Filing, RELATE, STAYED

# U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:05-cv-03272-MHP

Dressed to Kill Custom Draperies LLC v. Intel Corporation
Assigned to: Hon. Marilyn H. Patel
Cause: 15:15 Antitrust Litigation

Date Filed: 08/10/2005
Jury Demand: Plaintiff
Nature of Suit: 410 Anti-Trust
Jurisdiction: Federal Question

**Plaintiff**

**Dressed to Kill Custom Draperies LLC**    represented by    **David Boies**
Straus & Boies LLP
4041 University Drive
Fairfax, VA 22030
703-764-8700
Fax: 703-764-8704
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Donald F. Drummond**
Drummond & Associates
One California Street, Suite 300
San Francisco, CA 94111
415-433-2261
Fax: 415-438-9819
Email: ballen@drummondlaw.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ian Otto**
Straus & Boies LLP
4041 University Drive
5th Floor
Fairfax, VA 22030
703-764-8700
Email: iotto@straus-boies.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Timothy D. Battin**
Straus & Boies LLP
4041 University Dr.
5th Floor
Fairfax, VA 22030
703-764-8700
Email: tbattin@straus-boies.com
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Intel Corporation**                    represented by  **Christopher B. Hockett**
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA 94111-4067
415-393-2000
Fax: 415-393-2286
Email: chris.hockett@bingham.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joy K. Fuyuno**
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA 94111-4067
415-393-2000
Fax: 415-393-2286
Email: joy.fuyuno@bingham.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/10/2005 | 1 | COMPLAINT /issued summons against Intel Corporation ( Filing fee $ 250, receipt number 3375364.). Filed byDressed to Kill Custom Draperies LLC. (ga, COURT STAFF) (Filed on 8/10/2005) Additional attachment(s) added on 8/22/2005 (ga, COURT STAFF). (Entered: 08/12/2005) |
| 08/10/2005 | 2 | ADR SCHEDULING ORDER: Case Management Statement due by 12/7/2005. Case Management Conference set for 12/14/2005 10:30 AM.. Signed by Judge James Larson on 8/10/05. (Attachments: # 1 Standing Order)(ga, COURT STAFF) (Filed on 8/10/2005) (Entered: 08/12/2005) |
| 08/10/2005 | | CASE DESIGNATED for Electronic Filing. (ga, COURT STAFF) (Filed on 8/10/2005) (Entered: 08/12/2005) |
| 09/12/2005 | 3 | STIPULATION *AND [PROPOSED] ORDER TO EXTEND TIME FOR DEFENDANT TO ANSWER OR OTHERWISE RESPOND TO COMPLAINT* by Intel Corporation. (Hockett, Christopher) (Filed on 9/12/2005) (Entered: 09/12/2005) |
| 09/12/2005 | 4 | Statement of Facts *DEFENDANT'S FEDERAL RULES OF CIVIL PROCEDURE 7.1 AND CIVIL LOCAL RULE 3-16 DISCLOSURE STATEMENTS* filed byIntel Corporation. (Hockett, Christopher) (Filed on 9/12/2005) (Entered: 09/12/2005) |
| 09/13/2005 | 5 | STIPULATION AND ORDER TO EXTEND TIME. Signed by Judge |

| | | |
|---|---|---|
| | | James Larson on 9/13/05. (jlsec, COURT STAFF) (Filed on 9/13/2005) (Entered: 09/13/2005) |
| 09/29/2005 | 6 | ORDER RELATING CASES 05-3271 EMC, C 05-3272 JL, C 05-3273 EMC, AND C 05-3277 EDL to C 05-2669 MHP; Case reassigned to Judge Marilyn H. Patel for all further proceedings; Signed by Judge Marilyn Hall Patel on 9/26/2005(awb, COURT-STAFF) (Filed on 9/29/2005) (Entered: 09/29/2005) |
| 10/03/2005 | 7 | First MOTION for Extension of Time to File Answer re 1 Complaint filed by Intel Corporation. (Hockett, Christopher) (Filed on 10/3/2005) (Entered: 10/03/2005) |
| 10/03/2005 | 8 | Declaration of Richard A. Ripley in Support of 7 First MOTION for Extension of Time to File Answer re 1 Complaint filed byIntel Corporation. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C) (Related document(s)7) (Hockett, Christopher) (Filed on 10/3/2005) (Entered: 10/03/2005) |
| 10/03/2005 | 9 | Proposed Order re 7 First MOTION for Extension of Time to File Answer re 1 Complaint by Intel Corporation. (Hockett, Christopher) (Filed on 10/3/2005) (Entered: 10/03/2005) |
| 10/05/2005 | 10 | ORDER by Judge Marilyn Hall Patel granting 7 defendant's Motion for Extension of Time to Answer (awb, COURT-STAFF) (Filed on 10/5/2005) (Entered: 10/05/2005) |
| 11/01/2005 | 11 | STIPULATION *AND [PROPOSED] ORDER TO STAY DATES, EVENTS AND DEADLINES PENDING THE OUTCOME OF THE MOTION TO TRANSFER AND COORDINATE OR CONSOLIDATE PURSUANT TO 28 U.S.C. SECTION 1407* by Intel Corporation. (Fuyuno, Joy) (Filed on 11/1/2005) (Entered: 11/01/2005) |
| 11/08/2005 | 12 | STIPULATION AND ORDER STAYING CASE pending MDL determination; Signed by Judge Marilyn Hall Patel on 11/7/2005. (awb, COURT-STAFF) (Filed on 11/8/2005) (Entered: 11/08/2005) |
| 11/17/2005 | 13 | Letter from Joy K. Fuyuno re MDL Transfer Order of November 8, 2005. (Attachments: # 1 MDL Transfer Order)(Fuyuno, Joy) (Filed on 11/17/2005) (Entered: 11/17/2005) |
| 01/05/2006 | 14 | ORDER STATISTICALLY DISMISSING CASE pending MDL determination; Signed by Judge Marilyn Hall Patel on 1/5/2006. (awb, COURT-STAFF) (Filed on 1/5/2006) (Entered: 01/05/2006) |
| 01/10/2006 | 15 | ORDER of Transfer by the Judicial Panel on Multidistrict Litigation to transfer case to USDC for the District of Delaware (In Re Intel Corporation, Inc., Antitrust Litigation - MDL - 1717). (gba, COURT STAFF) (Filed on 1/10/2006) (Entered: 01/11/2006) |
| 01/11/2006 | 16 | Certified copy of transfer order, docket sheet along with the original case file sent to USDC for the District of Delaware (MDL - 1717). (gba, COURT STAFF) (Filed on 1/11/2006) (Entered: 01/11/2006) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 01/18/2006 09:33:17 | | |
| **PACER Login:** | ud0037 | **Client Code:** |
| **Description:** | Docket Report | **Search Criteria:** 3:05-cv-03272-MHP |
| **Billable Pages:** | 2 | **Cost:** 0.16 |

1   Straus & Boies, LLP
    David Boies, III
2   Timothy D. Battin
    Ian Otto
3   4041 University Drive
    Fairfax, VA 22030
4   Telephone: (703) 764-8700
    Facsimile: (703) 764-8704
5   tbattin@straus-boies.com

6   Donald F. Drummond (No. 052986)
    DRUMMOND & ASSOCIATES
7   One California Street, Suite 300
    San Francisco, CA 94111
8   Telephone: (415) 433-2261
    Facsimile: (415) 438-9819

9
    [other co-counsel appear at end of document]
10
    Attorneys for Plaintiff Dressed to Kill Custom Draperies, LLC
11  and all others similarly situated

12

13           **IN THE UNITED STATES DISTRICT COURT**

14        **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

15  DRESSED TO KILL CUSTOM              )   Case No.
    DRAPERIES, LLC and all others similarly )
16  situated,                           )   **C 05    3272**
                                        )   **COMPLAINT**
17              Plaintiff,              )
                                        )   **CLASS ACTION**
18        v.                            )
                                        )
19  INTEL CORPORATION, a Delaware        )
    corporation,                        )
20                                      )
                Defendant.              )
21  _____ )

22        Plaintiff Dressed To Kill Custom Draperies, LLC, though its attorneys, on behalf of itself

23  and all others similarly situated in the State of Arizona, brings this action against Intel

24  Corporation and its subsidiaries, including Intel Kabushiki Kaisha (collectively, "Intel")  for

25  damages and demands trial by jury, complaining and alleging upon information and belief as

26  follows:

27

28

DRUMMOND & ASSOCIATES
One California Street
Suite 300
San Francisco, CA 94111
(415) 433-2261

                                    1

                                    COMPLAINT – CLASS ACTION [Case No. 977325]

# NATURE OF THE ACTION

1.      This case involves a scheme by Intel to illegally stifle and destroy competition in order to maintain and extend its effective monopoly over microprocessors that run the Microsoft Windows and Linux operating systems (the "x86 Microprocessor Market"), leading to higher prices and less choice for consumers.  Intel, by using devices that create essentially impenetrable barriers to competition such as:  (a) payments in return for exclusivity; (b) discriminatory rebates, (c) discounts and subsidies conditioned on exclusive dealing arrangements: (d) threats of economic retaliation against those who do business with anyone other than Intel, or who cooperate with anyone other than Intel in the promotion of processors; and/or (e) misuse of industry standards, has stifled competition and illegally leveraged its market power to the detriment of consumers in Arizona and nationwide.

2.      Intel dominates the x86 Microprocessor Market.  Intel sells approximately 80% of the microprocessors units sold worldwide, capturing 90% of the world revenue from microprocessor sales.  For over a decade Intel has unlawfully maintained its monopoly by engaging in a relentless, worldwide campaign to coerce customers to refrain from dealing with anyone other than Intel – a campaign that has resulted in consumers of products containing microprocessors (the heart of the computer) paying higher prices for x86 microprocessors and the equipment of which they are a part than they would have paid had Intel not illegally sabotaged competition in the relevant market.  In its efforts to illegally stifle competition in the microprocessor market,  Intel has, inter alia:

A.      forced equipment manufacturers and other customers into exclusive or near-exclusive deals;

B.      conditioned rebates, allowances and market development funding on customers' agreement to limit it's purchases from  competitors;

C.      established a system of discriminatory, retroactive, first-dollar rebates that are available only when purchasers buy essentially all or all of their processors from Intel;

D.      threatened retaliation against customers that introduce computer

DRUMMOND & ASSOCIATES
One California Street
Suite 300
San Francisco, CA 94111
(415) 433-2261

2

COMPLAINT – CLASS ACTION [Case No. 977325]

1    platforms based on products other than Intel's, particularly where those platforms would be sold

2    in what Intel considers to be important market segments.

3            E.    established and enforced quotas among key retailers effectively

4    requiring them to stock almost exclusively Intel-powered computers, thereby artificially limiting

5    consumer choice;

6            F.    forced personal computer ("PC") makers and technology partners

7    to boycott competitive product launches and promotions; and

8            G.    abused its market power by forcing on the industry technical

9    standards and products that are designed to handicap competitors in the marketplace without

10   providing offsetting benefits to consumers.

11           3.    Intel's economic coercion extends to all levels of the computer industry –

12   from large computer-makers like Hewlett-Packard and IBM to small system-builders to

13   wholesale distributors to retailers such as Circuit City.  All must either accept conditions that

14   exclude Intel's competitors or suffer discriminatory pricing and competitively crippling

15   treatment.  In this way, Intel has avoided competition on the merits, depriving competitors of the

16   opportunity to compete against Intel based price and quality and depriving consumers throughout

17   the United States, including Arizona, of the quality and price benefits of a competitive market in

18   microprocessors.

19           4.    Intel's conduct has caused computer manufacturers to continue to buy

20   most of their requirements from Intel, continue to pay monopoly prices, continue to be exposed

21   to Intel's economic coercion, and continue to submit to artificial limits Intel places on their

22   purchase from companies attempting to compete with Intel.  With the opportunity for Intel's

23   competitors to compete thus constrained, the cycle continues, and Intel's monopoly profits

24   continue to flow.

25           5.    Arizona purchasers of computers and equipment with Intel x86

26   microprocessors such as Plaintiff, as with consumers in every state, ultimately pay the price, in

27   the form of inflated PC prices and the loss of freedom to purchase computer products that best fit

28   their needs and budget.  Consumers and the rest of society are worse off because in stifling

DRUMMOND & ASSOCIATES
One California Street
Suite 300
San Francisco, CA 94111
(415) 433-2261

3

COMPLAINT – CLASS ACTION [Case No. 977325]

1    competition, Intel stifles the innovation provided by parties competing in a competitive market.

2           6.     The Japanese Government recognized these competitive harms when on

3    March 8, 2005, its Fair Trade Commission (the "JFTC") recommended that Intel be sanctioned

4    for its exclusionary misconducts directed at Advanced Micro Devices ("AMD"). Intel chose not

5    to contest the charges. The European Commission has also recently stepped up its investigation

6    of Intel's marketing practices.

7                        **JURISTICTION AND VENUE**

8           7.     The court has jurisdiction pursuant to 28 U.S.C. § 1332(d), in that this is a

9    class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of

10   interest and costs, and in which some members of the proposed class(es) are citizens of a state

11   different from Intel.

12         8.     Venue is proper pursuant to 28 U.S.C. § 1391(a) because Intel resides and

13   is subject to personal jurisdiction in this District and because a substantial part of the events or

14   omissions giving rise to the claims occurred in this District.

15                         **THE PARTIES**

16         9.     Dressed To Kill Custom Draperies, LLC ("Plaintiff") is a Limited Liability

17   Corporation located and doing business in Maricopa County, Arizona. Plaintiff has purchased a

18   computer with an Intel Pentium IV (x86 microprocessor) within the last 4 years.

19         10.    Defendant Intel Corporation is a Delaware corporation with its principal

20   executive offices at Santa Clara, California, and it conducts business both directly and through

21   wholly-owned and dominated subsidiaries worldwide and is registered to do business in this

22   state. Intel and its subsidiaries design, produce, and sell a wide variety of microprocessors, flash

23   memory devices, chipsets, memory, motherboards and silicon-based products for use in the

24   computer and communications industries worldwide.

25                     **CLASS ACTION ALLEGATIONS**

26         11.    Plaintiff brings this action under Federal Rule of Civil Procedure

27   23 (b) (3) on its own behalf and on behalf of the following Class:

28         12.    The Class is defined as:

DRUMMOND & ASSOCIATES
One California Street
Suite 300
San Francisco, CA 94111
(415) 433-2261

4

COMPLAINT – CLASS ACTION [Case No. 977325]

1   All persons or entities present in Arizona who indirectly purchased Intel x86
    Microprocessors or products containing Intel x86 Microprocessors manufactured
2   by Defendant from at least June 21, 2001 to the present. The Class of indirect
    purchasers of these products includes consumers and businesses that have
3   purchased Intel x86 Microprocessors and/or products containing Intel x86
    Microprocessors. Excluded from the class are all governmental entities,
4   Defendant and its subsidiaries and affiliates as well as its co-conspirators. The
    Class further excludes the judge presiding over this matter and the judge's
5   immediate family and staff.

6         13.     Although the exact size of the Class is unknown, the total number of class

7   members is in the hundreds of thousands, as all Arizona consumers who have purchased

8   computers containing Intel x86 microprocessors are in the Class. Based upon the nature of the

9   trade and commerce involved, the total number of Class members is such that joinder of the

10  claims of all Class members would be impracticable.

11        14.     Plaintiff's claims are typical of the claims of the Class in that Plaintiff

12  purchased a computer containing an Intel chip that is the subject of Intel's illegal attempts to

13  constrain trade in microprocessors.

14        15.     The following common questions of law or fact, among others, exist as to

15  the members of the Class:

16              A.     Whether Intel engaged in anticompetitive conduct that renders it

17  liable to the Class under Arizona consumer protection and antitrust laws;

18              B.     Whether Intel has a dominant share of the relevant product and

19  geographic markets;

20              C.     Whether Intel possessed monopoly power in the relevant market;

21              D.     Whether there are substantial barriers to entry to the relevant

22  product market

23              E.     Whether Intel has created artificial barriers to entry into the product

24  market;

25              F.     Whether Intel acquired or maintained power within the relevant

26  market through anticompetitive activity;

27              G.     The appropriate measure of the amount of damages suffered by the

28  Class;

DRUMMOND & ASSOCIATES
One California Street
Suite 300
San Francisco, CA 94111
(415) 433-2261

5

COMPLAINT – CLASS ACTION [Case No. 977325]

H.      The appropriate nature of the Class-wide relief;

I.      Whether Intel has created substantial barriers to competition in the x86 Microprocessor Market; and

J.      Whether there are any substitutes for x86 Microprocessors reasonably available.

16.     These and other questions of law or fact which are common to the members of the Class predominate over any questions affecting only individual members of the Class.

17.     After determination of the predominate and common issues identified above, if necessary or appropriate, the Class can be divided into logical and manageable subclasses.

18.     Plaintiff will fairly and adequately protect the interests of the Class in that Plaintiff has no relevant interests that are antagonistic to other members of the Class and has retained counsel competent and experienced in the prosecution of Class actions and antirust litigation to represent himself and the Class.

19.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual joinder of all damaged Class members is impractical.  The damages suffered by individual Class members are relatively small, given the expense and burden if individual prosecution of the claims asserted in this litigation.  Thus, absent the availability of Class action procedures, it would not be feasible for Class members to redress the wrongs done to them.  Even if the Class members could afford individual litigation, the court system could not.  Further, individual litigation presents the potential for inconsistent or contradictory judgments and would greatly magnify the delay and expense to all parties and to the court system.  Therefore, the class action device presents far fewer case management difficulties and will provide the benefits of unitary adjudication, economy of scale and comprehensive supervision by a single court.

20.     Intel has acted and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

DRUMMOND & ASSOCIATES
One California Street
Suite 300
San Francisco, CA 94111
(415) 433-2261

6

COMPLAINT – CLASS ACTION [Case No. 977325]

21.     In the absence of a class action, Intel would be unjustly enriched because they would be able to treating the benefits and fruits of the wrongful conduct.

## INTEL'S MONOPOLY POWER IN THE RELEVANT MARKET
## THE RELEVANT PRODUCT MARKET

22.     The relevant product market is the x86 microprocessor market.  A microprocessor is an integrated circuit that contains the entire central processing unit of a computer on a single chip.

23.     Although other microprocessors are offered for sale, the non-x86 microprocessors are not reasonably interchangeable with x86 microprocessors because none can run the x86 Windows or Linux operating systems or the application software written for them.

24.     A putative monopolist in this market can raise the prices of x86 microprocessors above a competitive level without losing so many customers to other microprocessors as to make this increase unprofitable.  While existing end-users can theoretically shift to other operations system platforms, the costs associated with replacing existing hardware and software make this impractical.  Further, the number of new, first-time users who could choose a different operating-system platform is too small to prevent an x86 microprocessor monopolist from imposing a meaningful price increase for a non-transitory period of time.  Computer manufacturers would also encounter tremendous costs in switching from x86 processors to other architectures, and no major computer maker has ever done it.  In short, demand is not cross-elastic between x86 microprocessors and other microprocessors at the competitive level.

## THE RELEVANT GEOGRAPHIC MARKET

25.     The relevant geographic market for x86 microprocessors is worldwide.  A relevant geographic submarket is the United States.  PC platform architecture is the same from country to country; microprocessors can easily and inexpensively shipped around the world, and frequently are; and the potential for arbitrage prevents chipmakers from pricing processors differently in one country than another.  Further, the nature of the product and the market – as well as Intel's actions in seeking to corner the market to the greatest degree possible, means that

DRUMMOND & ASSOCIATES
One California Street
Suite 300
San Francisco, CA 94111
(415) 433-2261

7

COMPLAINT – CLASS ACTION [Case No. 977325]

1     consumers in Arizona and other states are the real targets of the Defendant's actions and bear

2     much of the burden of Intel's anticompetitive activities, even though its effects and the nature of

3     its scheme are hidden from them in the whole prices they pay for the product and in the structure

4     of Intel's system of rebating and engaging in cooperative advertising.

5     **INTEL'S MONOPOLY POWER IN THE RELEVANT MARKET**

6            26.     Intel dominates the worldwide x86 microprocessor market.  According to

7     industry reports, over the past several years it has consistently achieved more than a 90% market

8     share as measured by revenue.   Intel has captured at least 80% of x86 microprocessor unit sales

9     in seven of the past eight years.

10            27.     The only party with more than a de minimus market share in the relevant

11     market is AMD.   AMD has consistently garnered about  9 of the revenue in the x86 market

12     while its worldwide volume share has stayed at about 15 percent.  Another competitor, National

13     Semiconductor, acquired Cyrix in 1997 and exited the market in 1998.  At the beginning of this

14     year only two other x86 chip makers remained – Via  Technologies, Inc. ("Via") and Transmeta

15     Corporation ("Transmetta").  Transmetta has announced its intention to stop selling x86

16     microprocessors, and Via faces dim prospects of growing its market share to a sustaining level in

17     light of Intel's anticompetitive activity.

18            28.     Intel is shielded from new competition by huge barriers to entry.  A chip

19     fabrication plant capable of efficiently mass-producing x86 microprocessors costs at least $2.5 to

20     $3.0 billion.  In addition, any new entrant would need the financial wherewithal to underwrite the

21     billions more in research and development costs to design a competing x86 microprocessor and

22     to overcome almost insurmountable intellectual property barriers.

23            29.     Annual worldwide consumption of x86 microprocessors currently stands

24     at just over 200 million units per year and is expected to grow by 50% over the balance of the

25     decade.  Most x86 microprocessors are used in desktop PCs and mobile PCs, with desktops

26     currently outnumbering mobile by a margin of three to one.  Of the total worldwide production of

27     computers powered by x86 microprocessors, 32% are sold to U.S. consumers.

28            30.     The majority of x86 microprocessors are sold to a handful of large original

DRUMMOND & ASSOCIATES
One California Street
Suite 300
San Francisco, CA 94111
(415) 433-2261

8

COMPLAINT – CLASS ACTION [Case No. 977325]

1    equipment manufacturers ("OEM"), highly visible companies recognized throughout the world

2    as the leading computer makers.  The top nine OEM are regarded by the industry as "Tier One"

3    OEMs, which collectively account for almost 80% of servers and workstations (specialty high-

4    powered desktops), The Tier One OEMs are:  Hewlett-Packard ("HP"), which now also owns

5    Compaq Computer ("Compaq"); Dell, Inc.  ("Dell"); IBM, which as of May 1, 2005, sold its PC

6    (but not server) business to Lenovo,  a P.C. maker based in Bejing, New York and North

7    Carolina; Gateway/eMachines; and Fujitsu/Fujitsu Siemens ("Fujitus"), the latter a Europe-based

8    joint venture.  Toshiba, Acer, NEC and Sony are commonly viewed as Tier One OEMs in the

9    notebook segment of the PC Market.  HP and Dell are the dominant players in the worldwide

10   desktop and mobile sales, collectively accounting for over 30% of those markets, and almost

11   60% of worldwide server sales.  Both are U.S.-based companies, as is Gateway and Gateway /

12   eMachines; and all but Gateway have U.S. manufacturing operations (as does Sony, which

13   operates a North American production facility in San Diego).

14          31.    The balance of x86 production is sold to smaller system builders and to

15   independent distributors.  The latter, in turn, sell to smaller OEMs, regional computer

16   assemblers, value-added resellers and other distributors.

17          32.    OEMs sell their computers through a variety of distribution channels

18   including sales directly to customers through web-based e-commerce, sales though company-

19   employed sales force and sales through a network of independent distributors (who focus on

20   smaller business customers).  With the exception of Dell, which markets directly to consumers,

21   most OEMs also sell through retail chains.  Intel and its customers compete not only to have

22   OEMs incorporate their microprocessors into their PCs but also to convince retailers to allocate

23   shelf-space, so that the PCs containing their respective microprocessors can be purchased in the

24   retailers' store.

25                      **INTEL'S ANTICOMPETITIVE PRACTICES**

26          33.    When IBM defined the original PC standards in the early 1980's, it had

27   available a variety of microprocessors each with its own instruction set – among these were

28   microprocessors developed by Motorola, Zilog, National Semiconductor, Fairchild, Intel and

DRUMMOND & ASSOCIATES
One California Street
Suite 300
San Francisco, CA 94111
(415) 433-2261

9

COMPLAINT – CLASS ACTION [Case No. 977325]

1  AMD. IBM selected the Intel architecture, which utilized what became known as the x86

2  instruction set (after Intel's naming convention for its processors, i.e. 8086, 80186, 80286,

3  80386), and a compatible operating system offered by Microsoft, known as DOS. Unwilling to

4  be consigned to a single supply source, IBM demanded that Intel contract with another integrated

5  circuit company and license it to manufacture x86 chips. In 1982 to facilitate AMD's position as

6  a second source for x86 chips, the companies entered into the AMD – Intel Technology

7  Exchange Agreement (the "Agreement"). Intel soon thereafter set out to sabotage the

8  agreement.

9         34.    In 1984, Intel decided it would become the sole-source for the promising

10  80386 chip. To fully realize its objective, Intel engaged in an elaborate and insidious scheme to

11  mislead AMD (and the public) into erroneously believing that AMD would be a second source

12  for supplying IBM with chips – at the time essentially the market, thereby keeping the

13  appearance of an alliance between AMD and Intel and keeping a veneer of competition for years.

14  <div align="center">INTEL'S MONOPLY IS THREATENED</div>

15         35.    Intel's conduct gave it a significant head start over its competitors in the

16  x86 microprocessor market. In 1999 AMD introduced the Athlon microprocessor, it marked the

17  first (but not the last) time Intel was technologically surpassed, and beat it to market with a new

18  generation Windows microprocessor. AMD's Athlon chip was the first to break the 1GHz speed

19  barrier and outperformed Intel's Pentium III chips in tests.

20         36.    In April of 2003, AMD introduced its Opteron microprocessor, the world's

21  first 64-bit x86 microprocessor for servers. Six months later, AMD launched the Athlon64, 64-

22  bit x86 microprocessor for desktops and mobile computers. AMD's new microprocessors were

23  backward compatible, meaning they could accommodate 32-bit software as well as 64-bit

24  programs.

25         37.    Even though competitors were producing better microprocessors, at lower

26  prices, Intel has maintained its x86 microprocessor monopoly by deploying a host of financial

27  and other anticompetitive business strategies than in effect limit its customers' ability to deal

28  with competitors. Intel continues to dominate the x86 microprocessor market through the use of

DRUMMOND & ASSOCIATES
One California Street
Suite 300
San Francisco, CA 94111
(415) 433-2261

10

COMPLAINT – CLASS ACTION [Case No. 977325]

1   anticompetitive practices including (i) direct payments in return for exclusivity and near-

2   exclusivity; (ii) discriminatory rebates, discounts and subsidies conditioned on customer

3   "loyalty" that have the practical and intended effect of creating exclusive or near-excludes

4   dealing arrangements; (iii) threats of economic retaliations against those who refuse to limit their

5   business with competitors to Intel-approved models, brands, lines and/or sectors, or would

6   cooperate too closely with competitors and (iv) misuse of industry standards setting processes so

7   as to disadvantage competitors in the market place. As a result of these anticompetitive

8   practices, consumers pay inflated prices of x86 microprocessors and equipment contain them,

9   and have fewer competition choices for such microprocessors.

10          38.     Intel's anticompetitive misconduct is global. It has targeted both U.S. and

11  foreign customers at all levels to prevent competitors from gaining market share, with the goal of

12  keeping competitors small and keeping Intel's customers dependent on Intel. In this way, OEMs

13  remain vulnerable to continual threats of Intel retaliation, Intel's potential competitors remain

14  capacity-constrained, the OEMs remain Intel-dependent, and Intel thereby perpetuates its

15  economic hold over OEMs, allowing Intel to continue to demand that its customers curtail their

16  dealings with Intel's potential competitors. And the cycle repeats itself: by unlawfully

17  exploiting its existing market share, Intel impedes the competitive growth of its competitors and

18  increases and perpetuates the harm of potential customers and consumers.

19              INTEL'S ANTICOMPETIVE PRACTICES DIRECTED AT
                    OEMS AND COMPETITORS DIRECTLY
20

21          39.     Currently, most of the major OEMs must deal with Intel. First, the other

22  microprocessor manufacturers are too small to service all of an OEM's needs while continuing to

23  satisfy their existing customers demand. Second, to meet customer expectations, OEMs must

24  assure commercial computer buyers that specifications, including the microprocessor, will

25  remain unchanged during the product's lifecycle.

26          40.     Intel has induced OEMs to enter into exclusive and near-exclusive deals,

27  thereby limiting its competitors' ability to gain incremental market share. In addition, Intel has

28  engaged in activities which have limited competitors from the most profitable product lines or

DRUMMOND & ASSOCIATES
One California Street
Suite 300
San Francisco, CA 94111
(415) 433-2261

11

from channels of distribution.   For example, Intel has largely foreclosed its competitors from the lucrative commercial desktop sector.

41.    An April 5, 1999 article in *PC Week* describes the coercive effect of one such form of payment, the "Intel Inside" program:

The wildly successful program, which began broadly in 1994 as a way to create brand equity for the Pentium processor, has evolved into Intel's premier marketing vehicle, managed by an army of attorneys, accountants and administrators.  Intel (Nasdaq:INTC) has deftly used the program to keep competitors at bay in the most profitable segment of its business: corporate PCs. That, in turn, has left corporate buyers with fewer options—and higher prices—when choosing business desktops, notebooks and PC servers.  A look at the Intel Inside program requirements, which Intel keeps under tight wraps, shows how fully the chip maker controls the marketing purse strings of PC makers that sign on.  Interviews with numerous current and former executives at Intel's largest OEM customers – all of whom declined to be identified, fearing reprisals from Intel – add fuel to the fire.  These executives call the program addictive and claim their companies can't compete without it...

The marketing dollars are enough of a carrot to make PC vendors sign off on Intel's restrictive program requirements.  Before PC makers are eligible for reimbursement, they must sign an OEM Trademark License Agreement that regulates everything from logo size and color to branding.  The eligible systems are added to a form called Attachment C, which Intel uses to keep track of qualifying Intel Inside products.  OEMs must modify Attachment C every time they introduce a new Intel-based system.  Once a PC maker meets all Attachment C guidelines, Intel reimburses 6 percent of the total average selling price of each vendor's worldwide microprocessor shipments.  But Intel doesn't give the  cash back to the PC makers to use as they wish; instead, it deposits the money into an Intel-managed market development fund, or MDF, which the vendors must use to pay for print, Web, broadcast or radio advertising of their Intel-based systems.  If they don't use the funding within 12 months, they lose it...

If a vendor strays from Intel's guidelines – even for an infraction as minor as using the wrong size Intel logo on their packaging – Intel can freeze its eligible marketing funds.  Since the funds come from the PC companies' chip payments, many customers believe Intel artificially inflates processor pricing to cover the costs.  "They already have your extra money," said a veteran executive who retired last year from a top PC company.  "They're charging you more money and then giving it back to you so you can advertise their products."...

Although the guidelines don't prohibit use of non-Intel chips, they provide strong monetary disincentives to do so, several OEMs said.  How strong? A licensee forfeits all MDF funding for a brand if it adds a non-Intel chip to the line.  If it wishes to use another vendor's processor, it must establish and entirely new brand or sub-brand for that chip to retain funding for the existing brand.  "There is no doubt that it's one of the major factors that influence [product] decisions," said a 20—year IBM PC executive who left the company in 1997.  The source spoke from experience.  In 1995, he said, IBM built several prototypes of low-cost retail and small office PCs based on Cyrix processors.  But executives scrapped the plans, in part because they couldn't leave what the source described as a "substantial" amount of advertising money on the table.  The branding restrictions

DRUMMOND & ASSOCIATES
One California Street
Suite 300
San Francisco, CA 94111
(415) 433-2261

COMPLAINT – CLASS ACTION [Case No. 977325]

go a long way toward explaining why none of the top 10 PC makers uses non-Intel chips in its business desktop lines.

42.     Intel has imposed on OEMs a system of first-dollar rebates that have the effect of creating exclusive or near-exclusive dealing arrangements and artificially foreclosing competitors from any meaningful share of the market.  In order to qualify for a rebate on any of its purchases, an OEM must first achieve a target level of purchases set by Intel.  Only upon an OEM's reaching this target will Intel retroactively provide a rebate.  Intel intentionally sets a rebate trigger level of purchases it knows to constitute a substantial percentage of a customer's needs.

43.     By setting its rebate targets as a significant percentage of the customer's requirements, Intel's rebate schemes is discriminatory and market-foreclosing.  If a customer chooses to purchase any significant quantity of microprocessors from an Intel competitor, it will not qualify for its rebate, thus raising the price it will pay on all Intel microprocessors it buys.  By tailoring targets to each customer's size and anticipated volume, Intel locks up significant percentages of the market much more effectively and at a lesser cost to itself – but to a greater harm to its competitors and ultimately consumers – as compared to offering such rebates for comparable purchase levels to all customers on a nondiscriminatory basis.

44.     Intel's rebate and other business strategies effectively cap the volumes of competitor-powered products than an OEM can buy and sell.  The use of retroactive rebates forecloses the possibility of a competitor inducing the OEM to launch a non-Intel powered platform.  Since OEMs incur substantial expense in designing and engineering a new computer, and make the investment only if they foresee a substantial chance of selling a sufficient volume to recoup it.  Intel's business strategies effectively foreclose the possibility of significant competitor-powered products from being developed and sold.

45.     Intel also uses product bundling in an exclusionary manner.  For example, in bidding for a new OEM platform, Intel bundles microprocessors with free or heavily discounted chipsets or motherboards.  Because some of Intel's competitors do not sell chipsets or motherboards, this product bundling enables Intel to avoid competing directly on microprocessor

DRUMMOND & ASSOCIATES
One California Street
Suite 300
San Francisco, CA 94111
(415) 433-2261

13

COMPLAINT – CLASS ACTION [Case No. 977325]

1  price and quality by imposing disproportionate burdens on Intel's competitors that are wholly

2  unrelated to microprocessor product quality and price.

3       46.    In April 2003, Intel also disrupted AMD's launch of its Opteron server

4  chip which was rolled out on April 22, 2003. With few in attendance and little industry support,

5  the Opteron server chip floundered in the market. A computer industry journal reported Intel's

6  fingerprints were all over the Opteron launch: "They all [vendors] told me that prior to the

7  launch, they received a phone call from Intel. Intel asked if they were going to the launch. If

8  they replied yes, then Intel rep asked them if it was 'important to them to go', or 'if they really

9  wanted to go.' Pressing the vendors, I got the same response, 'Intel is too smart to threaten us

10  directly, but it was quite clear from that phone call that we would be risking our various kickback

11  money if we went.'" (<http://theinquirer.net/?article=9139>.)

12       47.    Other companies that reported being intimidated from participating in the

13  Opteron launch were MSI, Atipa, Solectron and Fujitsu-Siemens. Indeed, Intel representatives

14  told Fujitsu-Siemens' executives in the weeks preceding the Opteron launch that if they attended,

15  they would be the only Tier One OEM showing its support, because all of the other OEMs had

16  backed out. With the exception of IBM, Intel was right.

17       48.    In March 2005, the Japan Fair Trade Commission ("JFTC") found that

18  Intel's wholly-owned Japanese subsidiary, Intel Kabushiki Kaisha ("IJKK"), had violated Section

19  3 of Japan's Antimonopoly Act, explaining as follows:

20      IJKK, since May 2002, has made the five major Japanese OEMs refrain from
    adopting competitors' CPUs for all of most of the PCs manufactured and sold by

21      them or all of the PCs that belong to specific groups of PCS referred to as 'series',
    by making commitments to provide the five OEMs with rebates and/or certain

22      funds referred to as 'MDF' (Market Development Fund) in order to maximize
    their MSS [the proportion of Intel microprocessors incorporated into an OEM's

23      computers], respectively, on condition that:
        (a)    the Japanese OEMs make MMS at 100% and refrain from

24      adopting competitors' CPUs
        (b)    the Japanese OEMs make MSS at 90%, and put the ratio of

25      competitors' CPUs in the volume of CPUs to be incorporated into
    the PCs manufactured and sold by them down to 10%; or

26          (c)    the Japanese OEMs refrain from adopting competitors'
    CPUs to be incorporated into PCs in more than one series with

27      comparatively large amounts of production volume to others.

28

DRUMMOND & ASSOCIATES
One California Street
Suite 300
San Francisco, CA 94111
(415) 433-2261

14

COMPLAINT – CLASS ACTION [Case No. 977325]

49.     According to the JFTC findings: "the ratio of the sales volume by AMD Japan and Transmeta USA among Total Domestic CPU Sales Volume decreased from approximately 24% in 2002 to approximately 11% in 2003.  By means of such conducts, IJKK has substantially restrained the competition in the market of CPUs sold to the Japanese OEMs, by acting to exclude its competitors' business activities related to the sales of CPUs to the five OEMs."  Intel has accepted the JFTC's recommendations and has chosen not to contest its conclusions.

## INTEL'S ANTICOMPETITIVE PRACTICES DIRECTED AT DISTRIBUTORS

50.     Intel employs tactics similar to those aimed at OEMs to prevent distributors from carrying competitive products.  For example, it entered into an exclusive deal with Synnex, which is one of the largest microprocessor distributors in the Unties States.  Given Intel's substantial market share, there is no pro-competitive justification for the arrangement.

51.     As with OEMs, Intel offers discounts and rebates to distributors on the condition that they no do business with competitors, either worldwide or in what Intel considers a strategic sub-market.

52.     Intel also offers an array of programs to distributors in exchange for their commitment to carry Intel microprocessors exclusively: marketing bonuses, increased rebates, credit programs for new customers (credits that can be used for all products from Intel and any other suppliers), payment for normal freight charges, and special inventory assistance such as credits to offset inventory costs.

53.     Intel also offers retroactive rebates triggered when a distributor reaches a prescribed buying quota.  Like the rebates offered to OEMs, the intent is to inflict economic punishment on those who do too much business with Intel's competitors.  But, unlike OEMs, distributors are unaware of the specific "goals" Intel has set for them or the precise consequence of failing to meet them – Intel does not share this information with distributors; they simply receive a check at the end of the quarter.  As a result, if distributors purchase any substantial number of microprocessors from Intel's competitors, they put their Intel rebate money at risk.

DRUMMOND & ASSOCIATES
One California Street
Suite 300
San Francisco, CA 94111
(415) 433-2261

15

**Anticompetitive Practices Directed At Retailers**

54.     Approximately twenty percent of desktop and notebook computers are purchased at retail stores.  A few of retailers dominate the U.S. PC market: Best Buy and Circuit City are the largest.  Other significant, but smaller retailers are Walmart/Sam's Club, Staples, Office Depot and Office Max.

55.     A chipmaker faces a two-step process to get its platform on retail shelves: first, it must convince one of more OEMs to build machines using its microprocessors at a suggested price point (called "getting on the roadmap"); and second, it must convince the retailer to stock and devote shelf space to these machines.  Shelf space comes at a premium.  The major retailers demand market development funds ("MDF") in exchange for shelve space.  MDF can consist of cooperative advertising support, but more frequently it comprises a marketing-related opportunity that a chipmaker must buy for tens of thousands of dollars, for example, space in a Sunday circular, an in-store display or an internet training opportunity with the chain's sales staff.

56.     Intel's ability to pressure OEMs to produce a significant portion of their product line with Intel microprocessor has naturally led to an overwhelming number of products available at a retail level.  Also, it has significantly greater financial resources with which to buy retail shelf space for products containing Intel microprocessors.  To leverage those advantages, Intel has also made exclusive deals with many key retailers.

57.     To further limit competitors access to consumers, Intel instituted a rebate program similar to what it foisted on OEMs, with a similar exclusionary effect.  Under this program, Intel provides full MDF payments to retailers, such as Best Buy and Circuit City, only if they agree to limit to 20 % not just the shelf space devoted to competitor based products, but also the share of revenues they generate from selling competing platforms.  If a competitor's share exceeds 20%, the offending retailer's marketing support from Intel is cut by 33% across all Intel products.

58.     Intel's dealings with retailers are unlawfully exclusionary, have no pro-competitive justification, and are intended to maintain its monopoly.

DRUMMOND & ASSOCIATES
One California Street
Suite 300
San Francisco, CA 94111
(415) 433-2261

16

COMPLAINT – CLASS ACTION [Case No. 977325]

### Intel's Standard Setting and Other Technical Abuses

59.     Companies within the computer industry often agree to design certain aspects of their products in accordance with industry standards to ensure broad compatibility. Indeed, standards are not only ubiquitous in the computer industry, they are essential.  But when a company is unfairly excluded from the standards-setting process or is denied timely access to the standard, competition can be restrained in a way that reverberates throughout the entire market.  Intel has employed, and continues to employ, a variety of tactics that have the purpose and effect of excluding and/or hampering competitors' full and active participation in the development of important industry standards.  It has also worked to deny competitors timely access to such standards.  Its efforts have hampered its competitors' ability to vigorously compete in the market.

60.     Although industry organizations responsible for establishing standards governing computer memory chips exist, such as the Joint Electronic Device Engineering Council ("JEDEC"), Intel has convened a secret committee that it dubbed the Advanced DRAM Technology ("ADT") Consortium to develop and promulgate competing memory standards.

61.     Arrangements such as this allow Intel to tighten its control over the industry by converting what the component manufacturers intend as a public standard into a proprietary one, and thereby guarantees itself an undeserved head-start and unfair competitive advantage.

62.     Even where it has been unable to exclude competitors from participating in the development of industry standards, Intel has attempted to drive the adoption of standards having no substantial consumer benefit and whose sole purpose was to competitively disadvantage competitors based on its highly integrated microprocessor architecture.  For example, Intel proposed that JEDEC modify a proposed industry standard for dual inline memory modules, ("DIMMs") in a way that has no technical merit, but if adopted, would delay competitors' ability to enter and compete in the market.

63.     Intel has also designed and marketed microprocessor-related products with the goal of compromising performance for those who opt for competitors' products, even if it

DRUMMOND & ASSOCIATES
One California Street
Suite 300
San Francisco, CA 94111
(415) 433-2261

17

COMPLAINT – CLASS ACTION [Case No. 977325]

1    requires Intel to sacrifice its own product quality and integrity.  For example, Intel has designed

2    its compilers, which translates software programs into machine-readable language to degrade

3    performance when a program is run on an AMD platform.  When software programs created with

4    Intel compilers detect an AMD microprocessor (i.e., when "CPUID," which identifies the

5    microprocessor is "Authentic AMD") they execute a code path that disrupts the program and can

6    cause the program to crash.

7          64.    Intel has not been content with simply locking up the microprocessor

8    market; through the use of their monopoly power in the microprocessor market they are seeking

9    to expand into chipsets, memory, and motherboard markets.

10          65.    In April 2002, Intel and Intergraph Corporation ("Intergraph")[1] entered

11    into a settlement agreement to end litigation filed by Intergraph in the United States District

12    Court for the Northern District of Alabama.  In that suit, Intergraph alleged that Intel had engaged

13    in anticompetitive behavior and infringed on Intergraph's patents. Specifically, Intergraph alleged

14    that Intel used its dominant market positions in the microprocessor market to coerce Intergraph

15    into giving up valuable patent rights. According to the Intergraph complaint, Intel again

16    employed its familiar coercive tactics: withholding essential design and defect information for

17    released Intel products and intentionally interfered with Intergraph's customers and suppliers.

18          66.    In the settlement agreement with Intergraph, Intel paid $300,000,000.00

19    for a license under the Intergraph Patents.  The license granted to Intel under the settlement

20    agreement expressly excludes a license to Intel's customers to combine licensed Intel products

21    with other third party chipsets or memory.  Thus a purchaser who purchases only a

22    microprocessor from Intel without a license to combine that microprocessor with a chipsets and

23    memory must either negotiate a license with Intergraph or infringe the Intergraph patent and run

24    the risk of a patent infringement lawsuit.  The end result would be that the only way to avoid the

25    patent issues would be to purchase not only the microprocessor, but also the chipsets, memory,

26    and motherboard from Intel.

27

28      [1] Intergraph is the world's largest company dedicated to supplying interactive computer graphics systems. Intergraph also makes and markets workstations for the engineering field.

DRUMMOND & ASSOCIATES
One California Street
Suite 300
San Francisco, CA 94111
(415) 433-2261

18

COMPLAINT – CLASS ACTION [Case No. 977325]

67.     The settlement agreement also granted a license to Intel's customers which use an Intel motherboard, so long as that motherboard contains exclusively Intel processing elements.

68.     As a result, a purchaser of Intel's microprocessor can either (1) purchase the rest of its chipsets, motherboard, and memory from Intel, or (2) purchase a third party chipsets, motherboard, and memory and face the possibility of a patent infringement lawsuit from Intergraph, if they fail to enter into a license agreement with Intergraph.

69.     The above described settlement agreement allows Intel to effectively force its customers, using its market power in the microprocessor market and under threat of suit from Intergraph, to purchase not only Intel microprocessors, but also Intel chipsets, memory, and motherboards.

## EFFECTS OF INTEL'S MISCONDUCT

70.     Were it not for Intel's acts, Intel's competitors would be able to compete for microprocessor market on competitive merit, bringing customers and end-product consumers such as plaintiff, lower prices, enhanced innovation and greater freedom of choice.

71.     Intel's anticompetitive acts both inside and outside of the territorial boundaries of the United States have a direct, substantial, and reasonable foreseeable effect on trade and commerce and consumers, like Plaintiff, located in the state of Arizona, as well as consumers in other states.

72.     Intel's actions are also effectively hidden from those who are ultimately affected most its actions: consumers.  Intel's rebate programs and the exclusivity of those rebate programs are not publicly disclosed, nor are their effects – which together with their other exclusionary practices, show up only in the predominance of Intel products in consumer computer products.  As noted earlier, Intel relies on the uncertainty and fear created by its lack of disclosure as to some of its rebate and incentive programs to create an interrorem effect among distributors.  Further, even at the retail level, Intel's incentives, exclusive dealings, are, upon information and belief, largely kept from the public for fear that they would hurt Intel's image with consumers and the ability to generate public good will in light of an image of buying off

DRUMMOND & ASSOCIATES
One California Street
Suite 300
San Francisco, CA 94111
(415) 433-2261

19

COMPLAINT – CLASS ACTION [Case No. 977325]

1   retailers and distributors to avoid competition.

2                   **IMPERMISSIBLE MARKET EFFECTS UNDER**

3         73.     The contract, combination, and conspiracy alleged herein had the

4   following effects, among others:

5              A.     Competition between and among Defendant and their competitors

6   in the sale of x86 microprocessors was unreasonably restrained;

7              B.     Indirect purchasers of x86 microprocessors were deprived of the

8   benefits of free and open competition; and

9              C.     Prices paid by Plaintiff and other Class Members for x86

10   microprocessors were fixed, raised, maintained, and stabilized at artificially high and

11   noncompetitive levels.

12         74.     As a result, Plaintiff and members of the Class have been injured in their

13   business and property in that they paid more for products containing x86 microprocessors than

14   they otherwise would have paid in the absence of Defendant's unlawful anticompetitive

15   practices.

16                              **COUNT I**

17          **VIOLATION OF ARIZONA'S ANTITRUST LAWS:**
                    **ILLEGAL RESTRAINT OF TRADE**

18

19         75.     Plaintiff incorporates herein by reference the allegations contained in

20   paragraphs 1-76 above.

21         76.     Beginning at least as early as July 11, 2001, and continuing to the present,

22   Intel and its distributors and OEMs, together with others, have engaged in conduct constituting

23   contracts, combinations, and conspiracy in unreasonable restraint of trade and commerce in

24   violation of A.R.S. §44-1402.

25         77.     The contract, combination, and conspiracy is continuing and will continue

26   unless the relief prayed for herein is granted.

27         78.     Plaintiff and Class members have been and will continue to be injured in

28   their business and property by Defendant's illegal contract, combination, and conspiracy.

DRUMMOND & ASSOCIATES
One California Street
Suite 300
San Francisco, CA 94111
(415) 433-2261

20

COMPLAINT – CLASS ACTION [Case No. 977325]

1        79.     Pursuant to A.R.S. §44-1408, Plaintiff demands treble damages and

2 disgorgement from Defendant of all monies illegally acquired by it as a result of the unlawful

3 conduct alleged herein as provided by law in Arizona.

4 <div align="center">**COUNT II**</div>

5 <div align="center">**VIOLATION OF ARIZONA'S ANTITRUST LAWS: ILLEGAL MONOPOLIZATION**</div>

6        80.     Plaintiff incorporates herein by reference the allegations contained in

7 paragraphs 1-81 above.

8        81.     Beginning at least as early as July 11, 2001, and continuing to the present,

9 Defendant's illegal, anticompetitive and deceptive actions as described in this Complaint

10 constitute practices prohibited by A.R.S. § 1403.

11        82.     During the Class Period, Defendant directly or indirectly, and through

12 affiliates they controlled, acted to illegally and deceptively to constrain and monopolize the

13 market for x86 Microprocessor chips to be marketed and sold to consumers as part of products

14 sold and distributed in Arizona, and thus monopolize the consumer market for x86

15 microprocessors in Arizona.  These actions, designed to prevent consumers from having a choice

16 and the benefits of competition and to hide the actions behind rebates and cooperative marketing

17 programs, the full details of which were not fully disclosed even to the participants, restrained

18 trade or commerce in Arizona, and were designed to have, and did have, a substantial and

19 adverse impact on choice, prices and quality of x86 microprocessors delivered and marketed to

20 consumers in Arizona.

21        83.     Intel's unlawful actions in monopolizing and attempting to monopolize

22 and stifle competition and reduce consumer choice in the microprocessor market have  caused,

23 and continue to cause, substantial injury and damage to Plaintiff, the Class – consumers of

24 computer products containing x86 microprocessors in Arizona – and the public.

25        84.     Plaintiff and Class members have been and will continue to be injured in

26 their business and property by Defendant's illegal conduct.

27        85.     Pursuant to A.R.S. §44-1408, Plaintiff demands treble damages and

28 disgorgement from Defendant of all monies illegally acquired by them as a result of the unlawful

DRUMMOND & ASSOCIATES
One California Street
Suite 300
San Francisco, CA 94111
(415) 433-2261

21

COMPLAINT – CLASS ACTION [Case No. 977325]

1 | conduct alleged herein as provided by law in Arizona.

## COUNT III

### UNJUST ENRICHMENT

86.    Plaintiff incorporates herein by reference the allegations contained in paragraphs 1-87 above.

87.    Defendant benefited from its unlawful acts through the overpayment for x86 Microprocessors by Plaintiff and the Class. It would be inequitable for defendant to be permitted to retain the benefit of these overpayments, which were conferred by plaintiff and the Class and retained by Defendant.

88.    Plaintiff and the Class are entitled to have Intel's excess and unjustly obtained profits properly allocable to Arizona consumers disgorged by Intel and paid to the Plaintiff and the Class as damages or restitution.

### JURY TRIAL

Plaintiff requests a trial by jury on all issues so triable.

### RELIEF REQUESTED

WHEREFORE, Plaintiff prays for judgment against Defendant and respectfully requests the Court:

1.    Certify this action to proceed as a class action pursuant to Rule 23, and direct that reasonable notice be given to members of the Class;

2.    Adjudge and decree that Defendant's conduct has violated A.R.S. §§ 44-1402 and 1403, and that the Court award Plaintiff and the Class (i) actual damages in the amount to be proved at trial of the wrongful conduct alleged, plus interest and costs; and (ii) all other damages available under Arizona statutory and common law, including attorneys fees;

3.    Find that the Defendant was unjustly enriched and that the Defendant should disgorge its unjustly obtained profits for the benefit of the class;

4.    Award Plaintiff and the members of the Class the costs of this suit, including reasonable attorneys' fees;

5.    Award Plaintiff and the members of the Class pre-judgment and post-

DRUMMOND & ASSOCIATES
One California Street
Suite 300
San Francisco, CA 94111
(415) 433-2261

22

COMPLAINT – CLASS ACTION [Case No. 977325]

1  judgment interest on the above sums at the highest rate allowed by law; and

2          6.      Grant such other and further relief as this Court deems to be just and

3  equitable.

4

5  Dated:  August _____, 2005          DRUMMOND & ASSOCIATES

6

7                                      By _____

8                                          Donald F. Drummond
                                        Attorneys for Plaintiff Dressed to Kill Custom
9                                       Draperies, LLC and all others similarly situated

10  G:\drummondassoc\intel-class-action\compl-arizona.wpd

11  Of Counsel

12  Kenneth G. Walsh                    Andrew S. Friedman
13  Straus & Boies, LLC                 Francis J. Balint, Jr.
    2 Depot Plaza, 2nd Floor            Patrick J. Van Zanen
14  Bedford Hills, NY 10507             Bonnett, Fairbourn, Friedman & Balint, P.C.
                                        291 North Central Avenue, Suite 1000
15  Telephone: (914) 244-3200           Phoenix, AZ 85012
    Facsimile: (914) 244-3260           Tel: (602) 274-1100
16  kwalsh@straus-boies.com             Fax: (602) 274-1199
                                        afriedman@bffb.com
17

18  Wyatt B. Durette, Jr.
19  Kenneth McArthur                    Jeffrey A. Bartos
    Durrettebradshaw, PLC               Jonathan Rolfe
20  Main Street Center                  Guerrieri, Edmond, Clayman & Bartos, PC
    600 East Main Street                1625 Massachusetts Avenue, NW
21  Twentieth Floor                     Washington, DC 20036
    Richmond, VA 23219                  Tel: (202) 624-7400
22  Tel:  (804) 775-6809
23  Fax: (804) 775-6911

24  Dennis Stewart
25  Hulett Harper Stewart, LLP
    550 West C Street, Suite 1600
26  San Diego, CA 92101
    Tel: (619) 338-1133
27

28

DRUMMOND & ASSOCIATES
One California Street
Suite 300
San Francisco, CA 94111
(415) 433-2261

23

COMPLAINT – CLASS ACTION [Case No. 977325]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ) | |
| ) | |
| DRESSED TO KILL CUSTOM ) | |
| Plaintiff(s) ) | |
| ) | C 05-03272 JL |
| -v- ) | |
| ) | ORDER SETTING INITIAL CASE MANAGEMENT |
| INTEL CORPORATION ) | CONFERENCE |
| Defendant(s) ) | |
| _____) | |

IT IS HEREBY ORDERED that this action is assigned to the Honorable James Larson.  When serving the complaint or notice of removal, the plaintiff or removing defendant must serve on all other parties a copy of this order, the handbook entitled "Dispute Resolution Procedures in the Northern District of California," the Notice of Assignment to United States Magistrate Judge for Trial, and all other documents specified in Civil Local Rule 4-2. Counsel must comply with the case schedule listed below unless the Court otherwise orders.

IT IS FURTHER ORDERED that this action is assigned to the Alternative Dispute Resolution (ADR) Multi-Option Program governed by ADR Local Rule 3.  Counsel and clients must familiarize themselves with that rule and with the handbook entitled "Dispute Resolution Procedures in the Northern District of California."

CASE SCHEDULE   [ADR MULTI-OPTION PROGRAM]

| Date | Event | Governing Rule |
|---|---|---|
| 08/10/2005 | Complaint filed | |
| 11/23/2005 | Last day to meet and confer re initial disclosures, early settlement, ADR process selection, and discovery plan | FRCivP 26(f) & ADR LR 3-5 |
| 11/23/2005 | Last day to file Joint ADR Certification with Stipulation to ADR process or Notice of Need for ADR Phone Conference | Civil L.R. 16-8 |
| 12/07/2005 | Last day to complete initial disclosures or state objection in Rule 26(f) Report, file/serve Case Management Statement, and file/serve Rule 26(f) Report | FRCivP 26(a)(1) Civil L.R.16-9 |
| 12/14/2005 | Case Management Conference in Ctrm F,15th Floor,SF at 10:30 AM | Civil L.R. 16-10 |

Magistrate Judge James Larson
San Francisco
Courtroom F, 15th Floor

(415) 522-2112

James Larson, Magistrate Judge

Wings Hom, Courtroom Deputy (415) 522-2046

Venice Thomas, Secretary (415) 522-2112

Kathleen Campbell, Career Law Clerk


NOTICES

1. Civil Law & Motion is heard on Wednesdays at 9:30 a.m. Counsel need not reserve a hearing date for civil matters, but should confirm the judge's availability in the legal newspapers and on the district court web site, www.cand.uscourts.gov.

2. Criminal motions are scheduled with the courtroom deputy for any Thursday morning at 9:30 a.m. when the judge is available.  Motions are governed by the Federal Rules and the Civil and Criminal Local Rules.

3. Status and Case Management Conferences are heard on Wednesdays at 10:30 a.m.

4. Pretrial Conferences are heard Wednesdays at 11:00 a.m.

5. The Magistrate Judge's Settlement Conference Order is also available on the Court web site or from the Clerk's Office.

6. Parties with questions regarding scheduling of settlement conferences should contact Judge Larson's secretary, Venice Thomas, at (415) 522-2112. All other scheduling questions should be addressed to Judge Larson's courtroom deputy, Wings Hom, at (415) 522-2046.

7. Discovery disputes in cases referred by the district court are handled in one of three ways:

a. Motions noticed for a hearing before the district court and then referred to this court will be re-scheduled on Magistrate Judge Larson's Law and Motion calendar. Parties will be notified in writing.

b. In disputes which arise after the case has been referred, but before a motion has been filed before the district judge, the parties shall follow the following procedure:

Parties shall meet and confer in person, or, if counsel are located outside the Bay Area, by telephone, to attempt to resolve their dispute informally. A mere exchange of letters, telephone calls, or facsimile transmissions does not satisfy the requirement to meet and confer.

If, after a good faith effort, the parties have not resolved their dispute, they shall prepare a concise joint statement without affidavits or exhibits, stating the nature and status of their dispute. If a joint statement is not possible, each side may submit a brief individual statement. The Court will advise the parties regarding the need, if any, for formal briefing or a hearing.

Law and motion matters, including discovery motions, shall be filed in accordance with Civil Local Rule 7-2. Pursuant to Civil Local Rule 5-2(a), any papers filed in connection with any motion referred to Magistrate Judge Larson by a district judge must be filed in the Clerk's Office at the division where the chambers of the district judge is located, whether Oakland, San Francisco or San Jose. Pursuant to Civil Local Rule 5-2(b), the courtesy copies of papers filed in connection with any motion assigned to Magistrate Judge Larson, including those in cases where the assigned district judge sits in Oakland, or San Jose, must be delivered to the Clerk's Office or to Magistrate Judge Larson's chambers, at 450 Golden Gate Avenue, San Francisco.

Any party seeking an award of attorney fees or other expenses as sanctions in connection with a discovery dispute shall file a separate motion as required by Civil Local Rule 37-1(e).

c. Telephone conferences in discovery disputes are not encouraged but will be arranged at the court's discretion and are usually reserved for questions arising in the course of a deposition or other emergency.

d. In cases referred to Magistrate Judge Larson for discovery, if a party wishes to file a document under seal, that party shall first file a written request for a sealing order setting forth the good cause and accompanied by a proposed order, as provided by Civil Local Rule 79-5.

8. In all "E-Filing" cases when filing papers in connection with any motion for determination by the judge, the parties shall, in addition to filing papers electronically, lodge with chambers a printed copy of the papers by the close of the next court day following the day the papers are filed electronically. These printed copies shall be marked "Chambers Copy" and shall be submitted to the Clerk's Office, in an envelope clearly marked with the judge's name, case number and "E-Filing Chambers Copy." Parties shall not file a paper copy of any document with the Clerk's Office that has already been filed electronically.

9. Any proposed order in a case subject to electronic filing shall be e-filed.

10. Motions for summary judgment in cases assigned to Magistrate Judge Larson for trial shall be accompanied by a statement of the material facts not in dispute supported by citations to admissible evidence. The parties shall file a joint statement of undisputed facts wherever possible. If the parties are unable to reach complete agreement after meeting and conferring, they shall file a joint statement of the undisputed facts about which they do agree. Any party may then file a separate statement of the additional facts which the party contends are undisputed.

K:\lotus\domino\data\CAND\docs\Judges\jl\standingord-2004amended.wpd

1   BINGHAM McCUTCHEN LLP
    DAVID M. BALABANIAN (SBN 37368)
2   CHRISTOPHER B. HOCKETT (SBN 121539)
    JOY K. FUYUNO (SBN 193890)
3   Three Embarcadero Center
    San Francisco, California 94111-4067
4   Telephone: (415) 393-2000

5   Attorneys for Defendant
    Intel Corporation

6

7

8              UNITED STATES DISTRICT COURT

9           NORTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11   DRESSED TO KILL CUSTOM DRAPERIES, LLC, and all others similarly situated, | No. C-05-3272 |
| 12                  Plaintiff, | STIPULATION AND [PROPOSED] ORDER TO EXTEND TIME FOR DEFENDANT TO ANSWER OR OTHERWISE RESPOND TO COMPLAINT |
| 13      v. | |
| 14   INTEL CORPORATION, a Delaware Corporation, | |
| 15                  Defendant. | |
| 16 | |

17          IT IS STIPULATED BY AND BETWEEN THE PARTIES, THROUGH THEIR

18   COUNSEL AS FOLLOWS:

19           Pursuant to Civil Local Rule 6-2, Plaintiff Dressed To Kill Custom Draperies,

20   LLC and Defendant Intel Corporation hereby stipulate that Intel Corporation's response to

21   Plaintiff's complaint be extended 30 days, up to and including October 12, 2005.

22          This is the first stipulation between the parties. Because this litigation has just

23   begun, granting such a stipulation will not have any negative impact on the schedule of this case.

24   ///

25   ///

26

SF/21635210.1

1   DATED:  September 12, 2005

2
                                  BINGHAM McCUTCHEN LLP
3

4

5                                 By:_____/s/ Joy K. Fuyuno_____
                                         Joy K. Fuyuno
6                                       Attorneys for Defendant
                                         Intel Corporation
7

8   DATED:  September 12, 2005

9
                                  DRUMMOND & ASSOCIATES
10

11

12                                By:_____/s/ Donald F. Drummond_____
                                        Donald F. Drummond
13                                     Attorneys for Plaintiff
                                 Dressed To Kill Custom Draperies, LLC
14

15

16

17

18

19

20

21

22

23

24

25

26

                                 2                    Case No. C-05-3272

SF/21635210.1

1    <u>**[Proposed] Order to Extend Response Time**</u>

2         IT IS HEREBY ORDERED that Defendant Intel Corporation shall have up to and

3    including October 12, 2005 to respond to Plaintiff Dressed To Kill Custom Draperies, LLC's

4    complaint.

5    **PURSUANT TO STIPULATION, IT IS SO ORDERED.**

6    Dated:  September ____, 2005

7

8                                          _____

9                                                    United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

STIPULATION AND [PROPOSED] ORDER TO EXTEND TIME

1   BINGHAM McCUTCHEN LLP
    DAVID M. BALABANIAN (SBN 37368)
2   CHRISTOPHER B. HOCKETT (SBN 121539)
    JOY K. FUYUNO (SBN 193890)
3   Three Embarcadero Center
    San Francisco, California 94111-4067
4   Telephone: (415) 393-2000

5   Attorneys for Defendant
    Intel Corporation

6

7

8                       UNITED STATES DISTRICT COURT

9                      NORTHERN DISTRICT OF CALIFORNIA

10                         SAN FRANCISCO DIVISION

11

12  DRESSED TO KILL CUSTOM DRAPERIES,      No. C-05-3272
    LLC, and all others similarly sitauted,
13                                          DEFENDANT'S FEDERAL RULES OF
                      Plaintiff,            CIVIL PROCEDURE 7.1 AND CIVIL
14          v.                              LOCAL RULE 3-16 DISCLOSURE
                                            STATEMENTS
15  INTEL CORPORATION, a Delaware
    Corporation,
16
                      Defendant.
17

18          Pursuant to Rule 7.1, Federal Rules of Civil Procedure, the undersigned certifies

19  that there is no parent company and no publicly held entity that owns 10% or more of Intel.

20          Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other

21  than the named parties, there is no such interest to report.

22  ///

23  ///

24  ///

25  ///

26  ///

                                                                    Case No. C-05-3272

        DEFENDANT'S FRCP 7.1 AND CIVIL L.R. 3-16 DISCLOSURES

SF/21635229.1

1    DATED:  September 12, 2005

2
                                                BINGHAM McCUTCHEN LLP
3

4

5                                      By:                 /s/ Joy K. Fuyuno
                                                    Joy K. Fuyuno
6                                                  Attorneys for Defendant
                                                    Intel Corporation
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT'S FRCP 7.1 AND CIVIL L.R. 3-16 DISCLOSURES

SF/21635229.1

1   BINGHAM McCUTCHEN LLP
    DAVID M. BALABANIAN (SBN 37368)
2   CHRISTOPHER B. HOCKETT (SBN 121539)
    JOY K. FUYUNO (SBN 193890)
3   Three Embarcadero Center
    San Francisco, California  94111-4067
4   Telephone:  (415) 393-2000

5   Attorneys for Defendant
    Intel Corporation

6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11  DRESSED TO KILL CUSTOM DRAPERIES,        No. C-05-3272
    LLC, and all others similarly situated,
12                                           STIPULATION AND [PROPOSED]
                        Plaintiff,           ORDER TO EXTEND TIME FOR
13       v.                                  DEFENDANT TO ANSWER OR
                                             OTHERWISE RESPOND TO
14  INTEL CORPORATION, a Delaware            COMPLAINT
    Corporation,
15
                        Defendant.
16

17              IT IS STIPULATED BY AND BETWEEN THE PARTIES, THROUGH THEIR

18  COUNSEL AS FOLLOWS:

19              Pursuant to Civil Local Rule 6-2, Plaintiff Dressed To Kill Custom Draperies,

20  LLC and Defendant Intel Corporation hereby stipulate that Intel Corporation's response to

21  Plaintiff's complaint be extended 30 days, up to and including October 12, 2005.

22              This is the first stipulation between the parties.  Because this litigation has just

23  begun, granting such a stipulation will not have any negative impact on the schedule of this case.

24  ///

25  ///

26

                                                              Case No. C-05-3272
    ─────────────────────────────────────────────────────────────────────
            STIPULATION AND [PROPOSED] ORDER TO EXTEND TIME

1    DATED:  September 12, 2005

2
                              BINGHAM McCUTCHEN LLP
3

4

5                             By:  _____ */s/ Joy K. Fuyuno*_____
                                           Joy K. Fuyuno
6                                     Attorneys for Defendant
                                        Intel Corporation
7

8    DATED:  September 12, 2005

9
                              DRUMMOND & ASSOCIATES
10

11

12                            By:  _____ */s/ Donald F. Drummond*_____
                                         Donald F. Drummond
13                                    Attorneys for Plaintiff
                              Dressed To Kill Custom Draperies, LLC
14

15

16

17

18

19

20

21

22

23

24

25

26

                                        2                        Case No. C-05-3272

                         STIPULATION AND [PROPOSED] ORDER TO EXTEND TIME

SF/21635210.1

1               **[Proposed] Order to Extend Response Time**

2

3            IT IS HEREBY ORDERED that Defendant Intel Corporation shall have up to and

including October 12, 2005 to respond to Plaintiff Dressed To Kill Custom Draperies, LLC's

4   complaint.

5   **PURSUANT TO STIPULATION, IT IS SO ORDERED.**

6   Dated:  September __13__, 2005

7

8                               IT IS SO ORDERED

9                   United Judge James Larson

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

                      Case No. C-05-3272

STIPULATION AND [PROPOSED] ORDER TO EXTEND TIME

SF/21635210.1

FILED

SEP 2 9 2005

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1                 [PROPOSED] **RELATED CASE ORDER**

2

3       A Motion for Administrative Relief to Consider Whether Cases Should be

Related (Civil L.R. 3-12) has been filed. As the judge assigned to the above-captioned case, I
4
find that the more recently filed case(s) that I have initialed below are related to the case
5
assigned to me, and such case(s) shall be reassigned to me. Any cases listed below that are not
6
related to the case assigned to me are referred to the judge assigned to the next-earliest filed case
7
for a related case determination.
8

C 05-2669 MHP     David E. Lipton et al -v- Intel Corporation
9

10 C-05-3271 EMC     Jose Juan, et al. v. Intel Corporation

11                  I find that the above case is related to the case assigned to me.

12 C-05-3272 JL       Dressed to Kill Custom Draperies, LLC, et al. v. Intel Corporation

13                  I find that the above case is related to the case assigned to me.

14 C-05-3273 EMC     Tracy Kinder, et al. v. Intel Corporation

15                  I find that the above case is related to the case assigned to me.

16 C-05-3277 EDL     Edward Rush, et al. v. Intel Corporation

17                  I find that the above case is related to the case assigned to me.

18

19                           [PROPOSED] **ORDER**

20

      Counsel are instructed that all future filings in any reassigned case are to bear the
21
initials of the newly assigned judge immediately after the case number. Any case management
22
conference in any reassigned case will be rescheduled by the Court. The parties shall adjust the
23
dates for the conference, disclosures and report required by FRCivP 16 and 26 accordingly.
24
Unless otherwise ordered, any dates for hearing noticed motions are vacated and must be re-
25
noticed by the moving party before the newly assigned judge; any deadlines set by the ADR
26

1  Local Rules remain in effect; and any deadlines established in a case management order continue

2  to govern, except dates for appearance in court, which will be rescheduled by the newly assigned

3  judge.

4  DATED: _9/26_____, 2005

5

6                                                          Honorable Marilyn H. Patel

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

                                    4                          Case No. 05-2669

                            RELATED CASES MOTION

1  Bingham McCutchen LLP
   DAVID M. BALABANIAN (SBN 37368)
2  CHRISTOPHER B. HOCKETT (SBN 121539)
   JOY K. FUYUNO (SBN 193890)
3  Three Embarcadero Center
   San Francisco, CA  94111-4067
4  Telephone:  (415) 393-2000
   Facsimile:  (415) 393-2286
5
   Attorneys for Defendant
6  Intel Corporation

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                      SAN FRANCISCO DIVISION

11

12  DRESSED TO KILL CUSTOM DRAPERIES,          No. C-05-3272 (MHP)
    LLC and all others similarly situated,
13                                             INTEL'S MOTION TO ENLARGE
                   Plaintiff,                  TIME TO RESPOND TO COMPLAINT;
14                                             DECLARATION OF RICHARD A.
          v.                                   RIPLEY IN SUPPORT THEREOF;
15                                             [PROPOSED] ORDER
    INTEL CORPORATION, a Delaware
16  corporation,

17                 Defendant.

18

19          Pursuant to Civil L.R. 6-1(b) and 6-3, Defendant Intel Corporation ("Intel") respectfully

20  moves this Court for an order enlarging Intel's time to respond to the Complaint of Plaintiff

21  Dressed To Kill Custom Draperies, LLC ("Dressed To Kill") until either (1) 60 days after

22  transfer of the above-styled action pursuant to any motion to coordinate or consolidate pre-trial

23  proceedings pursuant to 28 U.S.C. §1407 or (2) 45 days after any such motion has been denied.

24  The grounds for Intel's motion are as follows:

25  ///

26  ///

INTEL'S MOTION TO ENLARGE TIME TO RESPOND TO COMPLAINT;
DECLARATION OF RICHARD A. RIPLEY IN SUPPORT THEREOF; [PROPOSED] ORDER

SF/21638352.1

1    This case is one of over 70 federal purported class actions ("related actions") — 27 of which

2    have been filed in this district — that similarly allege that Intel has violated federal and state

3    antitrust laws.  Declaration of Richard A. Ripley ("Ripley Decl.") ¶ 3 & Exh. B.[1]  Dressed To

4    Kill's complaint, filed on August 10, 2005, is the 60th federal purported class action filed and the

5    25th in this district.  Id. ¶ 3

6           On July 14, 2005, nearly one month before Juan filed his complaint here, the plaintiffs in

7    Brauch et al. v. Intel Corp., No. C:05-2743 (MP) (N.D. Cal.), petitioned the Judicial Panel on

8    Multidistrict Litigation ("JMPL") to have the related actions consolidated for pretrial purposes

9    (In re Intel Microprocessor Antitrust Litigation, MDL 1717)  pursuant to 28 U.S.C. §1407.

10   Ripley Decl. ¶ 4 & Exh. A.  On September 16, 2005, Intel identified this action as a tag-along

11   action to be included in the MDL.  Id. & Exh. B.  Plaintiff has not objected to this complaint

12   being designated as a tag-along action or being included in MDL 1717.  Id. ¶ 4.  Indeed, none of

13   the plaintiffs in the related actions have objected to MDL treatment.  Id.

14          In an effort treat all these related actions equally and put each on the same track, Intel has

15   spent the past three months negotiating a uniform date by which Intel would answer or otherwise

16   respond to the respective complaints in the related actions.  Id. ¶ 5.  Because of the pending

17   MDL treatment, it was essential to link the extension to the decision by the JPML whether, and

18   where, to consolidate these related actions.  Id.  Specifically, Intel sought a response date of 60

19   days after transfer of the above-styled action pursuant to any motion to coordinate or consolidate

20   pre-trial proceedings per 28 U.S.C. §1407 or, in the alternative, 45 days after any such motion

21   has been denied.  Ripley Decl. ¶ 5.  The 60 days permits the transfer of the necessary case files to

22   the MDL Court, as well as the opportunity for the MDL Court to consider the need for a

23   consolidated class complaint.  Id.

24   _____

25   [1]      This notice of related tag-along actions references 67 of the related actions.  At the time
     Intel filed this notice of tag-along actions, it had not been served in the other cases.

26

INTEL'S MOTION TO ENLARGE TIME TO RESPOND TO COMPLAINT;
DECLARATION OF RICHARD A. RIPLEY IN SUPPORT THEREOF; [PROPOSED] ORDER

SF/21638352.1

1    Subsequent to receiving service of the complaint on August 23, 2005, Intel conferred

2    with plaintiff, pursuant to Civil L.R. 6-3(a)(2), regarding a similar extension. *See* Ripley Decl.

3    ¶ 7. On September 9, 2005, one business day before Intel's original response date, plaintiff

4    advised Intel that, although he would agree to an extension to a date certain, he could not agree

5    to any extension linked to the decision by the JPML whether to include *Dressed To Kill* and

6    other actions in MDL 1717. *Id.* On September 12, 2005, the parties stipulated to an extension of

7    time for Intel to respond to the complaint up to and including October 12, 2005; it was the

8    parties' understanding that Intel would use the 30 days to file this contest motion for an

9    extension identical to that entered in the related MDL cases. *Id.*

10    Since September 12, 2005, Intel has conferred further with plaintiff regarding his

11    willingness to agree to the extension that Intel seeks through this motion. *Id.* ¶ 8. Plaintiff's

12    position remains unchanged; plaintiff will agree to an extension to a date certain, but opposes

13    giving Intel any extension that is linked to the JPML's decision. *Id.* As a result, *Dressed To Kill*

14    and the three other related actions that have as their main counsel Strauss & Boies LLP[2] are the

15    only actions that have not agreed to the uniform response date. *Id.* ¶ 6. Indeed, this extension

16    has been entered in 21 of the 23 other related actions in this district[3] and 40 related cases in other

17    District Courts (primarily the District of Delaware). *Id.*

18    Intel will suffer substantial prejudice should the Court deny the requested enlargement of

19    time in that its efforts to organize this welter of federal actions and provide a foundation for

20    litigating these related actions on a uniform schedule would be seriously compromised. *Id.* ¶ 9.

21    _____

22

23    [2]    Straus & Boies LLP is counsel for plaintiffs in *Dressed To Kill* as well as the following
      three related cases against Intel: *Jose Juan et al v. Intel Corp.*, No. C-05-3271 (N.D. Cal., filed
24    August 10, 2005); *Tracy Kinder et al v. Intel Corp.*, No. C-05-3273 (N.D. Cal., filed August 10,
      2005); and *Edward Rush et al v. Intel Corp.*, No. C-05-3277 (N.D. Cal., filed August 11, 2005).
25    [3]    Intel has not been served in the other two actions.
26

3

SF/21638352.1

1    Without the uniform response date, Intel may be compelled to respond in this action well ahead

2    of the response date for the other related actions.  *Id.*  This will result in needless duplicative

3    effort; for example, the claims that Dressed To Kill seeks to assert on behalf of West Virginia

4    residents were previously asserted in fifty-three (53) of the related actions.  *Id.*  Such a result

5    would undermine a fundamental purpose of coordinating pre-trial proceedings in an MDL, which

6    neither plaintiff nor any of the other purported class actions oppose.  Moreover, since it is likely

7    that the MDL court will direct the filing of a consolidated class complaint, any response that

8    Intel would have to file should this Court deny the extension would soon become moot.

9         Conversely, the requested extension would not materially affect the schedule in this case.

10    The JPML heard argument on the pending MDL petition on September 29, 2005.

11    *Id.* ¶ 10.  Thus, it is likely that this case will be transferred to the MDL Court before this

12    litigation can advance in a substantive manner.[4]

13         Finally, the extension to a date certain, as plaintiff proposed, is inefficient because the

14    parties cannot accurately predict when the JPML will issue its decision.  Consequently, an

15    extension to a date certain — unless that date is a minimum of several months — will likely

16    require the parties to return for additional extensions or risk voiding the cooperative efforts in 63

17    other actions.  *Id.* ¶ 8.

18    ///

19    ///

20    ///

21    ///

22

23    _____

24

25    [4]    Upon receiving the conditional transfer order, this Court must transfer the "complete original file."  MULTIDISTRICT LITIGATION RULE 1.6(a).

26

<div align="center">4</div>

INTEL'S MOTION TO ENLARGE TIME TO RESPOND TO COMPLAINT;
DECLARATION OF RICHARD A. RIPLEY IN SUPPORT THEREOF; [PROPOSED] ORDER

SF/21638352.1

1        Wherefore, Intel respectfully requests that this Court extend Intel's response date

2 commensurate with the identical extensions entered in the other MDL actions, in the form of the

3 accompanying proposed order. Intel does not believe that a hearing is necessary on this issue,

4 and — given that the current response date is October 12, 2005 — Intel respectfully requests that

5 this motion be considered on an expedited basis. In support of this motion, Intel relies on the

6 accompanying Declaration of Richard A. Ripley, the attachments thereto, and the docket in this

7 case and the related cases in this District.

8

9                                 Respectfully submitted,

10

11 DATED: October ___, 2005              Bingham McCutchen LLP

12

13                        By:

14                              DAVID A. BALABANIAN

                               Attorneys for Defendant

15                                  Intel Corporation

16

17

18

19

20

21

22

23

24

25

26

INTEL'S MOTION TO ENLARGE TIME TO RESPOND TO COMPLAINT;
DECLARATION OF RICHARD A. RIPLEY IN SUPPORT THEREOF; [PROPOSED] ORDER

SF/21638352.1

1
Bingham McCutchen LLP
2  DAVID M. BALABANIAN (SBN 37368)
   CHRISTOPHER B. HOCKETT (SBN 121539)
3  JOY K. FUYUNO (SBN 193890)
   Three Embarcadero Center
4  San Francisco, CA  94111-4067
   Telephone:  (415) 393-2000
5  Facsimile:  (415) 393-2286

6  Attorneys for Defendant
   Intel Corporation
7

8
                    UNITED STATES DISTRICT COURT
9
                   NORTHERN DISTRICT OF CALIFORNIA
10
                      SAN FRANCISCO DIVISION
11

12
   DRESSED TO KILL DRAPERIES LLC, and all          No. C-05-3272
13 others similarly situated,

14              Plaintiff,
15     v.                                            DECLARATION OF
                                                     RICHARD A. RIPLEY
16 INTEL CORPORATION, a Delaware
   corporation,
17              Defendant.

18

19        I, Richard A. Ripley, declare as follows:

20        1.    I am over the age of eighteen and competent to give testimony.  The facts in this

21 declaration are based upon my personal knowledge.

22        2.    I am a partner with the law firm of Bingham McCutchen, LLP, counsel of record

23 for Defendant Intel Corporation ('Intel') in *Dressed To Kill Draperies LLC et al. v. Intel*

24 *Corporation*, No. 05-3271 ('*Dressed To Kill*').

25        3.    *Dressed To Kill* is one of over 70 federal purported class actions ('related actions')—

26 27 of which have been filed in this district—all of which allege that Intel has violated federal and

SF/21637519.4

1  state antitrust laws. Plaintiff filed this complaint on August 10, 2005, making it the 60th federal

2  action and the 25th filed in this district. *Dressed To Kill* is one of four related actions in this

3  district that have the law firm of Straus & Boies LLP as their main outside counsel.

4      4. Attached hereto as EXHIBIT A is a true and correct copy of the MDL petition

5  filed by plaintiffs in *Brauch et al. v. Intel Corp.*, No. C-02-2743 (N.D. Cal.) to coordinate or

6  consolidate pre-trial proceedings of the related actions pursuant to 28 U.S.C. §1407. This

7  petition was filed on July 14, 2005, nearly one month before *Dressed To Kill* commenced. On

8  September 16, 2005, Intel identified *Dressed To Kill* as a tag-along action to the MDL petition.

9  Attached hereto as EXHIBIT B is a true and correct copy of the notice of related, tag-along

10  actions filed before the Judicial Panel on Multidistrict Litigation ('JPML') identifying *Dressed To*

11  *Kill* as a related action. Neither Plaintiff Dressed To Kill Draperies LLC nor any of the other

12  class plaintiffs has objected to this designation.

13      5. Over the past three months, I have negotiated with counsel in the related actions

14  extensions of time for Intel's responses to these various complaints that would result in a uniform

15  response date. A uniform response date is a critical step in treating all related actions equally

16  and ensuring that each was on the same track. Specifically, I obtained agreements to extend

17  Intel's response date in each of the related actions to 60 days after transfer of the case pursuant to

18  the pending MDL petition or, in the alternative, 45 days after the JPML denied the motion.

19  Because of the pending MDL treatment and the various service dates in the related actions, it

20  was essential to link the extension to the JPML's decision whether, and where, to consolidate

21  these related actions in order to assure a uniform response date. The 60 days permits the transfer

22  of the necessary case files to the MDL Court, as well as the opportunity for the MDL Court to

23  consider the need for a consolidated class complaint.

24      6. Pursuant to Civil L.R. 6-2, Intel obtained this uniform extension in 21 related

25  actions in the Northern District of California, and 40 related cases in other District Courts

26  (primarily the District of Delaware). A true and correct copy of one such stipulation is attached

<div align="center">2</div>

<div align="center">DECLARATION OF RICHARD A. RIPLEY</div>

1    hereto as EXHIBIT C for illustrative purposes. Of the related actions in which Intel has been

2    served, only the four Straus & Boies LLP actions have rejected this uniform extension.

3          7.      Shortly after Intel received service of *Dressed To Kill* on August 23, 2005, I

4    contacted Mr. Timothy D. Battin of Straus & Boies, pursuant to Civil L.R. 6-3(a)(2), to

5    determine whether the four Straus & Boies cases, including *Dressed To Kill*, would agree to the

6    uniform extension. During our conversations, I advised Mr. Battin that Intel was obtaining the

7    identical extension in the related actions. Mr. Battin stated that he would confer with his co-

8    counsel and call me back. On September 9, 2005, Mr. Battin advised me that although he would

9    agree to an extension to a date certain, he would not agree to any extension linked to the JPML's

10    decision. Since this conversation occurred just one business day before Intel's original response

11    date in *Dressed To Kill*, Mr. Battin agreed to a 30-day extension so that Intel could present the

12    court with a motion to enter the uniform response date. The parties filed that stipulated extension

13    on September 12, 2005.

14          8.      Since September 12, 2005, I have conferred further with Mr. Battin by email

15    regarding his client's willingness to agree to the uniform extension. Plaintiff's position remains

16    unchanged; plaintiff will agree to an extension to a date certain, but opposes giving Intel any

17    extension that is linked to the JPML's decision. An extension to a date certain, however, is

18    inefficient because the parties cannot accurately predict when the JPML will issue its decision.

19    Consequently, an extension to a date certain—unless that date is at least several months from now—

20    will likely require the parties to return for additional extensions or risk voiding the extensive

21    cooperative efforts in the other related actions to share a single response date.

22          9.      In the absence of the requested extension, Intel faces substantial prejudice.

23    Specifically, Intel's efforts to organize this welter of federal actions and provide a foundation for

24    litigating these related actions on a uniform schedule would be seriously compromised. Intel

25    will be compelled to file a response in this action well ahead of the date that Intel will need to

26    respond to any of the other related actions. This will result in needless, duplicative effort; for

<div align="center">3</div>

1   example, the claims that *Dressed To Kill* seeks to assert on behalf of West Virginia residents

2   were previously asserted in fifty-three (53) other related actions.  Such a result would undermine

3   a fundamental purpose of coordinating pre-trial proceedings in an MDL, which neither plaintiff

4   nor any of the other putative class action plaintiffs oppose.

5       10.      Conversely, the requested uniform extension would not materially affect the

6   schedule in this case.  The JPML heard argument on the pending MDL petition on September 29,

7   2005.  Thus, it is likely that this case will be transferred to the MDL Court before this litigation

8   can advance in a substantive manner beyond Intel filing its response to the complaint.

9       I declare under penalty of perjury that the foregoing is true and correct to the best of my

10  knowledge.

11

12  DATED:  October 3, 2005

13

14                                              _____
                                                Richard A. Ripley
15

16

17

18

19

20

21

22

23

24

25

26

<div align="center">4</div>

---

<div align="center">DECLARATION OF RICHARD A. RIPLEY</div>

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUL 1 4 2005

FILED
CLERK'S OFFICE

# MDL 1717

**PLEADING NO. 1**

## BEFORE THE JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

|  |  |  |
|---|---|---|
| IN RE INTEL MARKET PRACTICES ANTITRUST LITIGATION | : : : : : | MDL DOCKET NO. _____ |

## PLAINTIFFS MICHAEL BRAUCH AND ANDREW MEIMES' MOTION TO TRANSFER AND COORDINATE OR CONSOLIDATE FOR PRETRIAL PROCEEDINGS IN THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1407

Plaintiffs Michael Brauch and Andrew Meimes ("Plaintiffs") respectfully move the Judicial Panel on Multidistrict Litigation ("JPML" or "Panel") for an Order, pursuant to 28 U.S.C. § 1407, that would accomplish the following.

First, Plaintiffs ask the JPML to transfer four actions currently pending in the United States District Court for the District of Delaware, as well as any cases that may subsequently be filed asserting similar or related claims, to the United States District Court for the Northern District of California, San Francisco Division. The actions currently pending in the District of Delaware are as follows: (1) *Advanced Micro Devices, Inc. v. Intel Corp., et al.* No. 1:05-cv-00441 (D. Del., filed June 27, 2005); (2) *Kidwell, et al. v. Intel Corp*, No.

56555.1

1:05-cv-00470 (D. Del., filed July 6, 2005); (3) *Rainwater, et al. v. Intel Corp.*, No. 1:05-cv-00473 (D. Del., filed July 6, 2005); and (4) *Kravitz, et al. v. Intel Corp.*, No. 1:05-cv-476 (D. Del., filed July 8, 2005).

Second, Plaintiffs ask the JPML to consolidate the above four proceedings with the ten actions that are currently pending in the United States District Court for the Northern District of California. As of July 11, 2005, Plaintiffs are aware of the following actions pending in the Northern District: (1) *Brauch, et al. v. Intel Corp.*, No. C:05-2743 (BZ) (N.D. Cal., filed July 5, 2005); (2) *Konieczka v. Intel Corp.*, No. C:05-2700 (MHP) (N.D. Cal., filed June 30, 2005); (3) *Prohias v. Intel Corp.*, No. C:05-2699 (JL) (N.D. Cal., filed June 30, 2005); (4) *Niehaus v. Intel Corp.*, No. C:05-2720 (JCS) (N.D. Cal., filed July 1, 2005); (5) *Hamilton v. Intel Corp.*, No. C:05-2721 (JCS) (N.D. Cal., filed July 1, 2005); (6) *Baxley v. Intel Corp.*, No. C:05-2758 (EMC) (N.D. Cal., filed July 6, 2005); (7) *Lipton v. Intel Corp.*, No. C:05-2669 (MHP) (N.D. Cal., filed June 29, 2005); (8) *Frazier, et al. v. Intel Corp.*, No. C:05-2813 (N.D. Cal., filed July 11, 2005); (9) *Dickerson v. Intel Corp.*, No. C:05-2818 (JL) (N.D. Cal., filed July 11, 2005); and (10) *The Harman Press v. Intel Corp.*, (this case was filed late in the day therefore no number has been assigned by the court as of the date of this filing) (N.D. Cal., filed July 11, 2005). In support of their motion for transfer and consolidation, Plaintiffs state as follows.

1. The actions for which transfer and consolidation are proposed arise out of the same or similar illegal antitrust conduct and allege substantially similar claims. One of the actions was brought by Advanced Micro Devices ("AMD"), a competitor of defendant Intel Corporation ("Intel"). The remaining thirteen actions are brought on behalf of consumers who purchased Intel microprocessor computer chips ("Intel Chips"). All fourteen actions allege that Intel and its controlled subsidiaries and/or affiliates illegally maintained its monopoly power in the relevant microprocessor market and/or that Intel conspired to fix, raise, maintain and/or stabilize prices for Intel Chips sold in the United States and elsewhere. Intel manufactures, distributes, advertises and sells Intel Chips throughout the United States and the world.

56555.1

2.    Plaintiffs propose that the four actions pending in the District of Delaware be consolidated with the ten actions currently pending in the Northern District of California.

3.    All fourteen actions arise out of a common core of factual allegations, namely, that Intel illegally maintained its monopoly power in the relevant microprocessor market and/or engaged in a combination and conspiracy to suppress and eliminate competition in that market by fixing the prices of and/or allocating markets for Intel Chips sold in the United States and elsewhere, thus overcharging Original Equipment Manufacturer purchasers and consumers for prices paid for Intel Chips during the relevant time period.

4.    The centralization of these actions in a single judicial district for consolidated pretrial proceedings will promote the just and efficient conduct of these actions, will serve the convenience of all parties and witnesses, and will promote the interest of justice because all fourteen actions involve the same or similar factual and legal issues.

5.    Consolidation of the actions before a single court will conserve judicial resources, reduce litigation costs, prevent potentially inconsistent pretrial rulings, eliminate duplicative discovery, and permit the cases to proceed to trial more efficiently.

6.    All fourteen actions are in the very early stages of litigation; no responsive pleadings have been filed nor has any discovery been conducted.

7.    The proposed transfer and consolidation in the Northern District of California "will be for the convenience of parties and witnesses and will promote the just and efficient conduct" of these actions because it is expected that for each Plaintiff in each of the fourteen actions, counsel will take discovery of the same witnesses and documents to prove the same or similar conspiracy or conduct.

8.    Furthermore: (a) the majority of the cases (ten out of the fourteen cases) were filed in the Northern District of California; (b) the Northern District of California has the resources and judicial expertise to properly conduct this case; (c) Intel's principal place of business is located in the Northern District of California; (d) AMD's principal place of business is located in the Northern District of California; (e) likely witnesses and documentary

evidence are located in the Northern District; (f) the Court is centrally located to all parties; and (g) docket conditions favor the Northern District of California over the District of Delaware.

      9.    Plaintiffs' motion is based on the accompanying memorandum of law, the filed pleadings and papers, and other materials that may be presented to the Panel before or at the time of any hearing in this matter.

      WHEREFORE, Plaintiffs respectfully request that the Panel order that the four actions pending in the District of Delaware, as well as any cases that may be subsequently filed asserting related or similar claims, be transferred to the Northern District of California, San Francisco Division for consolidated and coordinated pretrial proceedings.

Dated: July 11, 2005                  Respectfully submitted,

By:                        
Michael P. Lehmann (Cal. Bar. No. 77152)
Thomas P. Dove (Cal. Bar. No. 51921)
Alex C. Turan (Cal. Bar. No. 227273)
THE FURTH FIRM LLP
225 Bush Street, 15th Floor
San Francisco, CA 94104
Telephone: (415) 433-2070
Facsimile: (415) 982-2076

Francis O. Scarpulla (Cal. Bar. No. 41059)
LAW OFFICES OF FRANCIS O.
SCARPULLA
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone: (415) 788-7210
Facsimile: (415) 788-0707

Craig C. Corbitt (Cal. Bar. No. 83251)
ZELLE HOFMANN VOELBEL MASON &
GETTE, LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone: (415) 693-0700
Facsimile: (415) 693-0770

Attorneys for Plaintiffs Michael Brauch and
Andrew Meimes

56555.1

## CERTIFICATE OF SERVICE

I, Alex C. Turan, on behalf of Plaintiffs Michael Brauch and Andrew Meimes, hereby certify that true and correct copies of the following documents were served on July 11, 2005, via U.S. mail on the court, counsel and/or parties of record listed below:

- Plaintiffs Michael Brauch and Andrew Meimes' Motion to Transfer and Coordinate or Consolidate for Pretrial Proceedings in the Northern District of California Pursuant to 28 U.S.C. § 1407;

- Memorandum of Points and Authorities in Support of Plaintiffs Michael Brauch and Andrew Meimes' Motion to Transfer and Coordinate or Consolidate for Pretrial Proceedings in the Northern District of California Pursuant to 28 U.S.C. § 1407;

- Exhibits to Plaintiffs Michael Brauch and Andrew Meimes' Motion to Transfer and Coordinate or Consolidate for Pretrial Proceedings in the Northern District of California Pursuant to 28 U.S.C. §1407;

- Plaintiffs Michael Brauch and Andrew Meimes' Reasons Why Oral Argument Should Be Heard;

- Certificate of Service;

- Cover letter to Clerk, United States District Court for the Northern District of California; and

- Cover letter to Clerk, United States District Court for the District of Delaware.

## COURTS

Clerk of Court
U.S. District Court
Northern District of California
450 Golden Gate Avenue, 16th Floor
San Francisco, CA 94102
Telephone:    (415) 522-2000

Clerk of Court
U.S. District Court
District of Delaware
J. Caleb Boggs Federal Building
844 North King Street
Wilmington, DE 19801
Telephone:    (302) 573-6170

## DEFENDANT

Intel Corporation
c/o CT Corporation System
818 West Seventh Street
Los Angeles, CA 90017


## PLAINTIFFS' COUNSEL IN RELATED ACTIONS

Lee M. Gordon
Elaine T. Byszewski
Hagens Berman Sobol Shapiro LLP
700 South Flower Street, Suite 2940
Los Angeles, CA 90017-4101
Telephone:      (213) 330-7150
Facsimile:      (213) 330-7152
**Counsel for Plaintiffs in** *Lipton, Konieczka, Prohias, Hamilton* **and** *Niehaus* **Actions**

Steve W. Berman
Anthony D. Shapiro
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone:      (206) 623-7292
Facsimile:      (206) 623-0594
**Counsel for Plaintiffs in** *Lipton, Konieczka, Prohias, Hamilton* **and** *Niehaus* **Actions**

Jeffrey F. Keller
Kathleen R. Scanlan
Law Offices of Jeffrey F. Keller
425 Second Street, Suite 500
San Francisco, CA 94107
Telephone:      (415) 543-1305
Facsimile:      (415) 543-7861
**Counsel for Plaintiffs in** *Lipton, Konieczka, Prohias, Hamilton, Niehaus* **and** *Baxley* **Actions**

Jeffrey S. Goldenberg
John C. Murdock
Murdock Goldenberg Schneider & Groh, L.P.A.
700 Walnut Street, Suite 400
Cincinnati, OH 45202-2011
Telephone:      (513) 345-8291
Facsimile:      (513) 345-8294
**Counsel for Plaintiffs in** *Konieczka* **and** *Niehaus* **Actions**

Lance A. Harke
Howard M. Bushman
Harke & Clasby LLP
155 South Miami Avenue, Suite 600
Miami, FL 33130
Telephone:      (305) 536-8222
Facsimile:      (305) 536-8229
**Counsel for Plaintiff in** *Prohias* **Action**

Francis O. Scarpulla
Law Offices of Francis O. Scarpulla
44 Montgomery Street, Suite 3400
San Francisco, CA  94104
Telephone:    (415) 788-7210
Facsimile:     (415) 788-0707
**Counsel for Plaintiffs in *Brauch* Action**

Craig C. Corbitt
Zelle Hofmann Voelbel Mason & Gette, LLP
44 Montgomery Street, Suite 3400
San Francisco, CA  94104
Telephone:    (415) 693-0700
Facsimile:     (415) 693-0770
**Counsel for Plaintiffs in *Brauch* Action**

Mark Reinhardt
Garrett D. Blanchfield, Jr.
Reinhardt Wendorf & Blanchfield
332 Minnesota Street, Suite E-1250
St. Paul, MN  55101
Telephone:    (651) 287-2100
Facsimile:     (651) 287-2103
**Counsel for Plaintiff in *Baxley* Action**

Eric J. Belfi
Murray Frank & Sailer, LLP
275 Madison Avenue
New York, NY  10016
Telephone:    (212) 682-1818
Facsimile:     (212) 682-1892
**Counsel for Plaintiff in *Baxley* Action**

Michele C. Jackson
Lieff Cabraser Heimann & Bernstein, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA  94111
Telephone:    (415) 956-1000
Facsimile:     (415) 956-1008
**Counsel for Plaintiffs in *Frazier* Action**

David S. Stellings
Jennifer Gross
Lieff Cabraser Heimann & Bernstein, LLP
780 Third Avenue, 48th Floor
New York, NY  10017-2024
Telephone:    (212) 355-9500
Facsimile:     (212) 355-9592
**Counsel for Plaintiffs in *Frazier* Action**

56625.1

Spencer Hosie
Bruce J. Wecker
Hosie McArthur LLP
One Market
Spear Street Tower, #2200
San Francisco, CA 94105
Telephone:    (415) 247-6000
Facsimile:    (415) 247-6001
**Counsel for Plaintiff in *Dickerson* Action**

Guido Saveri
R. Alexander Saveri
Geoffrey C. Rushing
Cadio Zirpoli
Saveri & Saveri, Inc.
111 Pine Street, Suite 1700
San Francisco, CA 94111
Telephone:    (415) 217-6810
Facsimile:    (415) 217-6813
**Counsel for Plaintiff in *Harman Press* Action**

Randy R. Renick
Law Offices of Randy R. Renick
128 North Fair Oaks Avenue, Suite 204
Pasadena, CA 91103
Telephone:    (626) 585-9608
Facsimile:    (626) 585-9610
**Counsel for Plaintiff in *Harman Press* Action**

Jesse A. Finkelstein
Frederick L. Cottrell, III
Chad M. Shandler
Steven J. Fineman
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
Telephone:    (302) 651-7500
Facsimile:    (302) 651-7701
**Counsel for Plaintiffs in *Advanced Micro Devices* Action**

Charles P. Diamond
Linda J. Smith
O'Melveny & Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067
Telephone:    (310) 246-6800
Facsimile:    (310) 246-6779
**Counsel for Plaintiffs in *Advanced Micro Devices* Action**

Mark A. Samuels
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, CA 90071-2899
Telephone:     (213) 430-6340
Facsimile:     (213) 430-6407
**Counsel for Plaintiffs in *Advanced Micro Devices* Action**

Pamela S. Tikellis
Robert J. Kriner, Jr.
A. Zachary Naylor
Robert R. Davis
Chimicles & Tikellis LLP
One Rodney Square
P.O. Box 1035
Wilmington, DE 19999
Telephone:     (302) 656-2500
Facsimile:     (302) 656-9053
**Counsel for Plaintiffs Kidwell, Reeder, Maita, JWRE, Moeller and Harms in *Kidwell*
Action, and Plaintiffs Rainwater, Chapman and Yaco in *Rainwater* Action**

Francis M. Gregorek
Betsy C. Manifold
Francis A. Bottini, Jr.
Rachele R. Rickert
Wolf Haldenstein Adler Freeman & Herz LLP
750 B Street, Suite 2770
San Diego, CA 92101
Telephone:     (619) 239-4599
Facsimile:     (619) 234-4599
**Counsel for Plaintiffs Kidwell, Reeder, Maita, JWRE, Moeller and Harms in *Kidwell*
Action, and Plaintiffs Rainwater, Chapman and Yaco in *Rainwater* Action**

Fred Taylor Isquith
Wolf Haldenstein Adler Freeman & Herz LLP
270 Madison Avenue
New York, NY 10016
Telephone:     (212) 545-4600
Facsimile:     (212) 545-4653
**Counsel for Plaintiffs Kidwell, Reeder, Maita, JWRE, Moeller and Harms in *Kidwell*
Action, and Plaintiffs Rainwater, Chapman and Yaco in *Rainwater* Action**

Mary Jane Edelstein Fait
Adam J. Levitt
Wolf Haldenstein Adler Freeman & Herz LLP
55 West Monroe Street, Suite 1111
Chicago, IL 60603
Telephone:     (312) 984-0000
Facsimile:     (312) 984-0001
**Counsel for Plaintiffs Kidwell, Reeder, Maita, JWRE, Moeller and Harms in *Kidwell*
Action, and Plaintiffs Rainwater, Chapman and Yaco in *Rainwater* Action**

Ann Lugbill
2406 Auburn Avenue
Cincinnati, OH 45219
Telephone:     (513) 784-1280
Facsimile:     (513) 784-1449
**Counsel for Plaintiff Reeder in *Kidwell* Action**

Brandon N. Voelker
28 West 5th Street
Covington, KY 41011
Telephone:     (859) 491-5551
**Counsel for Plaintiff Reeder in *Kidwell* Action**

Gene Summerlin
Ogborn, Summerlin & Ogborn, P.C.
210 Windsor Place
330 South Tenth Street
Lincoln, NE 68508
Telephone:     (402) 434-8040
Facsimile:     (402) 434-8044
**Counsel for Plaintiffs JWRE, Moeller and Harms in *Kidwell* Action**

Robert J. Sharkey
Vandervoort, Christ & Fisher, PC
Fifth Third Bank Building, Suite 312
67 West Michigan Avenue
Battle Creek, MI 49017
Telephone:     (269) 965-7000
Facsimile:     (269) 965-0646
**Counsel for Plaintiff Rainwater in *Rainwater* Action**

Richard A. Lockridge
Robert K. Shelquist
Lockridge Grindal Nauen P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone:     (612) 339-6900
Facsimile:     (612) 339-0981
**Counsel for Plaintiff Chapman in *Rainwater* Action**

Noah Golden-Krasner
Law Offices of Noah Golden-Krasner
354 West Main Street
Madison, WI 53703
Telephone:     (608) 441-8924
Facsimile:     (608) 442-9494
**Counsel for Plaintiff Yaco in *Rainwater* Action**

Joel Friedlander
James G. McMillan, III
Bouchard Margules & Friedlander, P.A.
222 Delaware Avenue, Suite 1400
Wilmington, DE 19801
Telephone:     (302) 573-3500
Facsimile:     (302) 573-3501
**Counsel for Plaintiffs in *Kravitz* Action**

56625.1                                                    -6-

Daniel Hume
David Kovel
Kirby McInerney & Squire LLP
830 Third Avenue
New York, NY 10022
Telephone:    (212) 371-6600
Facsimile:    (212) 751-2540
**Counsel for Plaintiffs in *Kravitz* Action**


Dated: July 11, 2005                    THE FURTH FIRM LLP

                    By:
                           Alex C. Turan (Cal. Bar. No. 227273)
                           THE FURTH FIRM LLP
                           225 Bush Street, 15th Floor
                           San Francisco, CA 94104
                           Telephone: (415) 433-2070
                           Facsimile: (415) 982-2076

                           Attorneys for Plaintiffs Michael Brauch and
                           Andrew Meimes

BINGHAM McCUTCHEN

Richard A. Ripley
Direct Phone: (202) 778-6101
Direct Fax:     (202) 778-6155
richard.ripley@bingham.com

September 16, 2005

Clerk of the Panel
Judicial Panel on Multidistrict Litigation
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, N.E.
Room G-255, North Lobby
Washington, D.C. 20002-8004

Re:   In Re Microprocessor Antitrust Litigation, MDL-1717

Dear Clerk of the Panel:

Pursuant to Rules 7.2(i) and 7.5(e) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Intel is filing today a notice of 41 potential tag-along actions pending in various federal courts.  The MDL petition in the above captioned matter has been set for hearing by the Panel on September 29, 2005, in Asheville, North Carolina.

Enclosed please find a courtesy copy of the complaints filed in these 41 related actions as well as the 27 related actions previously noticed to this Panel.

Sincerely,

*original signed*

Richard A. Ripley
Counsel for Intel Corporation

Enclosures

cc:      Attached Service List

Bingham McCutchen LLP
Suite 800
1120 20th Street, NW
Washington, DC
20036-3406

202.778.6150
202.778.6155 fax

bingham.com

Boston
Hartford
London
Los Angeles
New York
Orange County
San Francisco
Silicon Valley
Tokyo
Walnut Creek
Washington

# BEFORE THE JUDICIAL PANEL
# ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re Microprocessor Antitrust Litigation | MDL Docket No. 1717 |

## NOTICE OF RELATED, TAG-ALONG ACTIONS

Pursuant to Rules 7.2(i) and 7.5(e) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Defendant Intel Corporation ("Intel") hereby notify the Clerk of the Panel of 41 tag-along actions. The actions are listed in the attached table.

Defendant Intel respectfully requests these actions be consolidated with the other noticed actions in the above captioned MDL, still under consideration by this Panel and set for a hearing on September 29, 2005.

RECEIVED
CLERK'S OFFICE
2005 SEP 16 P 2: 23
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

DATED:  September 16, 2005

_____

Richard A. Ripley
BINGHAM McCUTCHEN LLP
1120 20th Street, NW, Suite 800
Washington, DC  20036
Telephone:  202.778.6150
Facsimile:  202.778.6155

David M. Balabanian
Christopher B. Hockett
Joy K. Fuyuno
BINGHAM McCUTCHEN LLP
Three Embarcadero Center
San Francisco, California  94111-4067
Telephone:  415.393.2000
Facsimile:  415.393.2286

Attorneys for Defendant
INTEL CORPORATION for all putative class
actions

2

# ATTACHMENT

| CASE NAME | DISTRICT COURT | DIVISION | CASE NUMBER | ASSIGNED JUDGE |
|---|---|---|---|---|
| Ian Walker, individually and on behalf of all others similarly situated, v. Intel Corporation | California | Northern | C-05-2882 | Hon. Marilyn H. Patel |
| Peter Jon Naigow, individually and on behalf of all others similarly situated v. Intel Corporation | California | Northern | C-05-2898 | Hon. Marilyn H. Patel |
| Kevin Stoltz , individually and on behalf of all others similarly situated, v. Intel Corporation | California | Northern | C-05-2897 | Hon. Marilyn H. Patel |
| Patrick Hewson, individually and on behalf of all others similarly situated, v. Intel Corporation | California | Northern | C-05-2916 | Hon. Marilyn H. Patel |
| Lawrence Lang on behalf of himself and all others similarly situated v. Intel Corporation | California | Northern | C-05-2957 | Hon. Marilyn H. Patel |
| Trotter-Vogel Realty, Inc. *d/b/a* Prudential California Realty, individually, and on behalf of all those similarly situated, v. Intel Corporation | California | Northern | C-05-3028 | Hon. Marilyn H. Patel |
| Karol Juskiewicz, on behalf of himself and all others similarly situated, v. Intel Corporation | California | Northern | C-05-3094 | Hon. Jeffery S. White |
| Athan Uwakwe, *d/b/a/* Tom Cyp Computers, individually, and on behalf of all those similarly situated, v. Intel Corporation | California | Northern | C-05-3197 | Hon. Marilyn H. Patel |

| CASE NAME | DISTRICT COURT | DIVISION | CASE NUMBER | ASSIGNED JUDGE |
|---|---|---|---|---|
| Jose Juan, on behalf of himself and all others similarly situated, v. Intel Corporation | California | Northern | C-05-3271 | Hon. Edward M. Chen |
| Dressed to Kill Draperies, LLC, and all others similarly situated, v. Intel Corporation | California | Northern | C-05-3272 | Hon. James Larson |
| Tracy Kinder, on behalf of himself and all others similarly situated, v. Intel Corporation | California | Northern | C-05-3273 | Hon. Saundra Brown Armstrong |
| Edward Rush on behalf of himself and all others similarly situated, v. Intel Corporation | California | Northern | C-05-3277 | Hon. Elizabeth D. Laporte |
| Christian Ambrusoso on behalf of himself and all others similarly situated v. Intel Corporation | Delaware | | 1:05-cv-00505 | Hon. Joseph J. Farnan, Jr. |
| Michael E. Ludt on behalf of himself and all others similarly situated v. Intel Corporation | Delaware | | 1:05-cv-00510 | Hon. Joseph J. Farnan, Jr. |
| Paul C. Czysz, on behalf of himself and all others similarly situated, v. Intel Corporation | Delaware | | 1:05-cv-00509 | Hon. Joseph J. Farnan, Jr. |
| Elizabeth B. Baran on behalf of herself and all others similarly situated, v. Intel Corporation | Delaware | | 1:05-cv-00508 | Hon. Joseph J. Farnan, Jr. |
| Ficor Acquisition Co. LLC, Richard Caplan; Maria Pilar Salgado; Paula Nardella; Nancy Wolfe; Leslie March; | Delaware | | 1:05-cv-00515 | Hon. Joseph J. Farnan, Jr. |

SF:21635&27.2

| CASE NAME | DISTRICT COURT | DIVISION | CASE NUMBER | ASSIGNED JUDGE |
|---|---|---|---|---|
| Tom Hobbs; Andrew Marcus; Virginia Deering, on their own behalves and on behalf of all others similarly situated, v. Intel Corporation | | | | |
| HP Consulting Services Inc, on behalf of itself and all others similarly situated v. Intel Corporation | Delaware | | 1:05-cv-00521 | Hon. Joseph J. Farnan, Jr. |
| Fairmont Orthopedics & Sports Medicine, P.A., on behalf of itself and all others similarly situated, v. Intel Corporation | Delaware | | 1:05-cv-00519 | Hon. Joseph J. Farnan, Jr. |
| Carrol Cowan Leonard Lorenzo; Russell Dennis. individually and on behalf of all others similarly situated, v. Intel Corporation | Delaware | | 1:05-cv-00522 | Hon. Joseph J. Farnan, Jr. |
| Law Offices of Kwasi Asiedu, on behalf of itself and all others similarly situated v. Intel Corporation | Delaware | | 1:05-cv-00520 | Hon. Joseph J. Farnan, Jr. |
| Lena K. Manyin and Jason Craig, on their own behalves and on behalf of all others similarly situated, v. Intel Corporation | Delaware | | 1:05-cv-00526 | Hon. Joseph J. Farnan, Jr. |
| Joseph Samuel Cone, on behalf of himself and all others similarly situated, v. Intel Corporation | Delaware | | 1:05-cv-00531 | Hon. Joseph J. Farnan, Jr. |
| Jerome Feitelberg, on behalf of | Delaware | | 1:05-cv-00532 | Hon. Joseph J. Farnan, Jr. |

SF/21635827.2

| CASE NAME | DISTRICT COURT | DIVISION | CASE NUMBER | ASSIGNED JUDGE |
|---|---|---|---|---|
| himself and all others similarly situated, v. Intel Corporation | | | | |
| Robin S. Weeth, on behalf of himself and all others similarly situated, v. Intel Corporation | Delaware | | 1:05-cv-00533 | Hon. Joseph J. Farnan, Jr. |
| Melinda Harr, D.D.S., P.C. on behalf of itself and all others similarly situated, v. Intel Corporation | Delaware | | 1:05-cv-00537 | Hon. Joseph J. Farnan, Jr. |
| Andrew S. Cohn, on behalf of himself and all others similarly situated v. Intel Corporation | Delaware | | 1:05-cv-00539 | Hon. Joseph J. Farnan, Jr. |
| Maria Griffin, on behalf of herself and all others similarly situated, v. Intel Corporation | Delaware | | 1:05-cv-00540 | Hon. Joseph J. Farnan, Jr. |
| Henry Kornegay, on behalf of himself and all others similarly situated, v. Intel Corporation | Delaware | | 1:05-cv-00541 | Hon. Joseph J. Farnan, Jr. |
| Paul Ramos, on behalf of himself and all others similarly situated, v. Intel Corporation | Delaware | | 1:05-cv-00544 | Hon. Joseph J. Farnan, Jr. |
| Bergerson & Associates, Inc., on behalf of himself and all others similarly situated, v. Intel Corporation | Delaware | | 1:05-cv-00547 | Hon. Joseph J. Farnan, Jr. |
| David Arnold, on behalf of himself and all others similarly situated, v. Intel Corporation | Delaware | | 1:05-cv-00554 | Hon. Joseph J. Farnan, Jr. |

SF/21635827.2

| CASE NAME | DISTRICT COURT | DIVISION | CASE NUMBER | ASSIGNED JUDGE |
|---|---|---|---|---|
| Lee Pines, on behalf of himself and all others similarly situated, v. Intel Corporation | Delaware | | 1:05-cv-00560 | Hon. Joseph J. Farnan, Jr. |
| Stuart Munson, on behalf of himself and all others similarly situated, v. Intel Corporation | Delaware | | 1:05-cv-00558 | Hon. Joseph J. Farnan, Jr. |
| Phillip Boeding, on behalf of himself and all others similarly situated, v. Intel Corporation | Delaware | | 1:05-cv-00557 | Hon. Joseph J. Farnan, Jr. |
| Angel Genese Gideon Elliot Nir Goldman, on behalf of themselves and all others similarly situated, v. Intel Corporation | Delaware | | 1:05-cv-00556 | Hon. Joseph J. Farnan, Jr. |
| Damon DiMarco individually and on behalf of all others similarly situated v. Intel Corporation | Delaware | | 1:05-cv-00627 | Hon. Joseph J. Farnan, Jr. |
| Justin Suarez on behalf of himself and all others similarly situated, v. Intel Corporation | California | Southern | 05-CV-1507 | Hon. Thomas J. Whelan |
| Nathaniel Schwartz, individually and on behalf of all others similarly situated v. Intel Corporation | Florida | Southern | 05-22262 | Hon. Jose E. Martinez |
| Andrew Armbrister and Melissa Armbrister, on behalf of themselves and all others similarly situated, v. Intel Corporation | Tennessee | Eastern | 2:05-cv-212 | Hon. J. Ronnie Greer |

RECEIVED
CLERK'S OFFIC

2005 SEP 13 P 3

⋯CIAL PANEL
⋯LTIDISTRIC
⋯ITIGATION

# BEFORE THE JUDICIAL PANEL
# ON MULTIDISTRICT LITIGATION

In re Microprocessor Antitrust Litigation

MDL Docket No. 1717

## AMENDED PROOF OF SERVICE

PROOF OF SERVICE

I am over eighteen years of age, not a party in this action, and employed in 0 County, District of Columbia at 1120 20th Street, NW, Suite 800, Washington, District of Columbia 20036-3406. I am readily familiar with the practice of this office for collection and processing of correspondence for mail delivery, and they are deposited that same day in the ordinary course of business.

On September 13, 2005, I served the attached to the following entities:

**NOTICE OF PRESENTATION OR WAIVER OF ORAL ARGUMENT**

☐    (BY FAX) by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

X    (BY MAIL) by causing a true and correct copy of the above to be placed in the United States Mail at Washington, District of Columbia in sealed envelope(s) with postage prepaid, addressed as set forth below. I am readily familiar with this law firm's practice for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence is deposited with the United States Postal Service the same day it is left for collection and processing in the ordinary course of business.

☐    (EXPRESS MAIL/OVERNIGHT DELIVERY) by causing a true and correct copy of the document(s) listed above to be delivered by _____ in sealed envelope(s) with all fees prepaid at the address(es) set forth below.

☐    (PERSONAL SERVICE) by causing a true and correct copy of the above documents to be hand delivered in sealed envelope(s) with all fees fully paid to the person(s) at the address(es) set forth below.

PROOF OF SERVICE

1

## PLAINTIFFS' COUNSEL

**The Furth Firm, LLP**
Michael P. Lehmann
Thomas P. Dove
Alex C. Turan
225 Bush Street, 15th Floor
San Francisco, CA 94104-4249
Telephone: (415) 433-2070
Facsimile: (415) 982-2076

*Brauch, and Meimes v. Intel Corp.,
Allanoff, et al. v. Intel Corp., Lazio
Family Prods., et al. v. Intel Corp.,
Roach v. Intel Corp.*

**Law Offices of Jeffrey F. Keller**
Jeffrey F. Keller
Kathleen R. Scanlan
425 Second Street, Suite 500
San Francisco, CA 94107
Telephone: (415) 543-1305
Facsimile: (415) 543-7861

*Stoltz, et al. v. Intel Corp., Naigow, et
al. v. Intel Corp.*

**O'Melveny & Myers LLP**
Charles P. Diamond
Linda J. Smith
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067
Telephone: (310) 246-6800
Facsimile: (310) 246-6779

*AMD, AMD International Sales &
Service, Ltd. v. Intel Corp.*

**Chimicles & Tikellis LLP**
Pamela S. Tikellis
Robert J. Kriner, Jr.
A. Zachary Naylor
Robert R. Davis
On Rodney Square
P.O. Box 1035
Wilmington, DE 19999
Telephone: (302) 656-2500
Facsimile: (302) 656-9053

*Volden, et al. v. Intel Corp., Ludt v.
Intel Corp., Czysz v. Intel Corp.,
Baran v. Intel Corp., Cowan, et al. v.
Intel Corp., Ficor Acquisition Co. LLC
d/b/a Mills & Greer Sporting Goods;
Richard Caplan; Maria Pilar
Salgado; Paula Nardella; Nancy
Wolfe; Leslie March; Tom Hobbs;
Andrew Marcus; Virginia Deering v.
Intel Corp., Genese, et al. v. Intel
Corp., DiMarco v. Intel Corp.*

PROOF OF SERVICE
2

**Bouchard, Margules & Friedlander, PA**
Joel Friedlander
James G. McMillan, III
222 Delaware Avenue, Suite 1400
Wilmington, DE 19801
Telephone: (302) 573-3500
Facsimile: (302) 573-3501

*Kravitz, and Allison v. Intel Corp.*

**Lieff, Cabraser, Heimann & Bernstein, LLP**
Michele C. Jackson
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Frazier, Frazier and Weiner v. Intel Corp.*

**Hosie McArthur LLP**
Spencer Hosie
Bruce J. Wecker
One Market Street
Spear Street Tower #2200
San Francisco, CA 94105
Telephone: (415) 247-6000
Facsimile: (415) 247-6001

*Dickerson v. Intel Corp.*

**Saveri & Saveri, Inc.**
Guido Saveri
R. Alexander Saveri
Geoffrey C. Rushing
Cadio Zirpoli
111 Pine Street, Suite 1700
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

*The Harman Press, et al. v. Intel Corp., Shanghai 1930 Restaurant Partners, LP, et al. v. Intel Corp., Major League Softball, Inc. v. Intel Corp.*

PROOF OF SERVICE

3

**Prickett, Jones & Elliott PA**
James L. Holzman
1310 King Street
P.O. Box 1328
Wilmington, DE 19899
Telephone: (302) 888-6509
Facsimile: (302) 658-8111

*Paul v. Intel Corp., Fairmont Orthopedics & Sports Medicine P.A. v. Intel Corp., Feitelberg, et al. v. Intel Corp., Harr v. Intel Corp., Ambruoso v. Intel Corp., HP Consulting Services, Inc. v. Intel Corp., Law Office of Kwasi Asiedu v. Intel Corp., Weeth v. Intel Corp., Kornegay v. Intel Corp., Bergerson & Associates, Inc. v. Intel Corp., Salpeter, et al. v. Intel Corp., Boeding v. Intel Corp., Munson v. Intel Corp., Pines v. Intel Corp.*

**Schmittinger & Rodriguez, PA**
Scott E. Chambers
414 State Street
P.O. Box 497
Dover, DE 19903
Telephone: (302) 674-0140
Facsimile: (302) 674-1830

*Ruccolo v. Intel Corp., Manyin, et al. v. Intel Corp., Cohn v. Intel Corp., Griffin v. Intel Corp., Paul Ramos v. Intel Corp.*

**Zelle, Hofmann, Voelbel, Mason & Gette, LLP**
Craig C. Corbitt
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone: (415) 693-0700
Facsimile: (415) 693-0770

*Law Offices of Laurel Stanley, et al. v. Intel Corp.*

**Rosenthal, Monhait, Gross & Goddess**
Jeffrey S. Goddess
Mellon Bank Center, Suite 1401
P.O. Box 1070
Wilmington, DE 19899-1070
Telephone: (302) 656-4433
Facsimile: (302) 658-7567

*Simon v. Intel Corp., Chacon and Russ v. Intel Corp., Cone v. Intel Corp.*

**Trump, Alioto, Trump & Prescott**
Mario Nunzio Alioto
2280 Union Street
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679

*Lang v. Intel Corp.*

**Cotchett, Pitre, Simon & McCarthy**
Joseph Cotchett
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Trotter-Vogel Realty, et al. v. Intel Corp.*

PROOF OF SERVICE

4

**Law Offices of Joseph M. Patane**
Joseph M. Patane
2280 Union Street
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0677

*Karol Juskiewicz v. Intel Corp.*

**Post Kirby Noonan & Sweat LLP**
Michael L. Kirby
Jonathan A. Boynton
One America Plaza
600 West Broadway, Suite 1100
San Diego, CA 92101
Telephone: (619) 231-8666
Facsimile: (619) 231-9593

*Justin Suarez v. Intel Corp.*

**Hagens Berman Sobol Shapiro, LLP**
Steve W. Berman
1301 Fifth Avenue
Suite 2900
Seattle, WA 98101

*Hamilton v. Intel Corp., Lipton, and
Thibedeau v. Intel Corp., Niehaus v.
Intel Corp., Prohias, et al v. Intel
Corp., Konieczka v. Intel Corp.,
Schwartz v. Intel*

**Reinhardt, Wendorf & Blanfield**
Garrett D. Blanchfield, Jr.
E1250 First National Bank Building
332 Minnesota Street
St. Paul, MN 55101

*Baxley v. Intel Corp.*

**Wolf Haldenstein Adler Freeman &
Herz LLC**
Fred T. Isquith
270 Madison Avenue
11th Floor
New York, NY 10016

*Kidwell, Maita, JWRE Inc., Moeller,
and Harms v. Intel Corp., Rainwater,
Chapman, Reeder, and Yaco v. Intel
Corp.*

**Glassman, Edwards, Wade &
Wyatt, P.C.**
B.J. Wade
26 North Second Street
Memphis, TN 38103

*Wiles v. Intel Corp.*

PROOF OF SERVICE

5

**Drummond & Associates**
Donald F. Drummond
One Calfornia Street
Suite 300
San Francisco, CA 94111
Telephone: (415) 433-2261
Facsimile: (415) 438-9819

*Juan v. Intel Corp., Dressed to Kill*
*Draperies, LLC v. Intel Corp., Kinder*
*v. Intel Corp., Rush v. Intel Corp.*

**Spector, Roseman & Kodroff, P.C.**
Eugene A. Spector
Jeffrey L. Kodroff
Jeffrey J. Corringan
Bill Caldes
1818 Market Street
Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

*Arnold v. Intel Corp.*

**Goodkind, Labaton, Rudoff &**
**Sucharow LLP**
Hollis L. Salzman
Kellie Safar
100 Park Avenue
New York, New York 10017
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Genese, et al. v. Intel Corp.*

**Kirby, McInerney & Squire LLP**
Daniel Hume.
David Kovel
830 Third Avenue
New York, NY 10022
Telephone: (212) 371-6600

*Kravitz and Allison v. Intel*

**Schmittinger & Rodriguez, P.A.**
Scott E. Chambers
Jeffrey J. Clark
414 South State Street
P.O. Box 497
Dover, DE 19903
Telephone: (302) 674-0140

*Arnold v. Intel Corp.*

**The Law Offices of Randy M.**
**Weber, P.A.**
777 Brickell Avenue
Suite 1114
Miami, FL 33131
Telephone: (305) 536-3434
Facsimile: (305) 536-3433

*Arnold v. Intel Corp.*

**Barrack Rodos & Bacine**
Mark Rosen
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600
Facsimile: (215) 963-0838

*Simon v. Intel*

**Trujillo Rodriguez & Richards LLP**
Ira Neil Richards
The Penthouse
226 W. Rittenhouse Square
Philadelphia, PA 19103
Telephone: (215) 731-9004

*Chacon and Russ v. Intel*

PROOF OF SERVICE
6

**Mager & Goldstein LLP**
Jayne A. Goldstein
2825 University Drive, Suite 350
Coral Springs, FL 33065
Telephone: (954) 341-0844

*Ficor Acquisition Co. LLC d/b/a Mills
& Greer Sporting Goods; Richard
Caplan; Maria Pilar Salgado; Paula
Nardella; Nancy Wolfe; Leslie March;
Tom Hobbs; Andrew Marcus; Virginia
Deering v. Intel Corp.,*

**Finkelstein, Thompson & Loughran**
Shannon P. Cereghino
Ali Oromchian
Christine G. Pedigo
601 Montgomery Street, Suite 665
San Francisco, CA 94111

*Walker v. Intel Corp.*

**Ross, Dixon & Bell LLP**
Roy M. Bell
Jason S. Hartley
550 West B. Street, suite 400
San Diego, CA 92101
Telephone: (619) 235-4040

*Gabriella Herroeder-Perras v. Intel*

**Ball & Scott**
Gordon Ball
550 W. Main Ave., Ste. 750
Knoxsville, TN, 37902

*Armbrister v. Intel Corp.*

I declare that I am employed in the office of a member of the bar of this District of Columbia at whose direction the service was made and that this declaration was executed on September 13, 2005, at Washington, District of Columbia.

E. Thanh Knudson

PROOF OF SERVICE

7

1    Bingham McCutchen LLP
     DAVID M. BALABANIAN (SBN 37368)
2    CHRISTOPHER B. HOCKETT (SBN 121539)
     JOY K. FUYUNO (SBN 193890)
3    Three Embarcadero Center
     San Francisco, CA  94111-4067
4    Telephone:  (415) 393-2000
     Facsimile:  (415) 393-2286
5
     Attorneys for Defendant
6    Intel Corporation

7

8                UNITED STATES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10                 SAN FRANCISCO DIVISION

11

12   LAWRENCE LANG, on behalf of himself and        No. C-05-2957-MHP
     all others similarly situated,
13                                                   STIPULATION AND [PROPOSED]
                      Plaintiff,                     ORDER TO CONTINUE FILING DATE
14        v.                                         FOR DEFENDANT'S RESPONSE TO
                                                     PLAINTIFF'S COMPLAINT
15   INTEL CORPORATION, a Delaware
     corporation,
16
                      Defendant.
17

18            IT IS STIPULATED BY AND BETWEEN THE PARTIES, THROUGH THEIR

19   COUNSEL AS FOLLOWS:

20            Pursuant to Civil Local Rule 6-2, Plaintiff Lawrence Lang and Defendant Intel

21   Corporation hereby stipulate that Intel Corporation's response to Plaintiff's complaint shall be

22   due either 60 days after transfer of the above captioned case pursuant to any motion to coordinate

23   or consolidate pre-trial proceedings per 28 U.S.C. Section 1407 or, in the alternative, 45 days

24   after any such motion has been denied.  The parties request this extension of time to answer or

25   otherwise respond because the plaintiffs in *Brauch, et al. v. Intel Corp.*, No. C 05-2743 (BZ)

26

---

STIPULATION AND [PROPOSED] ORDER TO CONTINUE RESPONSE DATE

1  (N.D. Cal., filed July 5, 2005), a related matter, have filed a petition to coordinate or consolidate

2  pre-trial proceedings per 28 U.S.C. Section 1407, and the above-styled action has been identified

3  as a related action to that petition.  As a result the outcome of the pending petition will impact

4  significantly the schedule of this case.

5         This is the first stipulation between the parties.  Because this litigation has just

6  begun, granting such a stipulation will not have any negative impact on the schedule of this case.

7  IT IS HEREBY STIPULATED.
   DATED:  August 11, 2005
8

9                              Bingham McCutchen LLP

10

11
                              By:_____ /s/ Joy K. Fuyuno _____
12                                      JOY K. FUYUNO
                                      Attorneys for Defendant
13                                      Intel Corporation

14  DATED:  August 16, 2005

15
                              Trump, Alioto, Trump and Prescott
16

17

18                            By:_____ /s/ Mario N. Alioto _____
                                      MARIO N. ALIOTO
19                                    Attorneys for Plaintiff
                                      Lawrence Lang
20

21

22

23

24

25

26

                                      2

STIPULATION AND [PROPOSED] ORDER TO CONTINUE RESPONSE DATE

**~~[PROPOSED]~~ ORDER TO CONTINUE DEFENDANT'S RESPONSE DATE**

IT IS HEREBY ORDERED that Defendant Intel Corporation's response to Plaintiff's complaint shall be due either 60 days after transfer of the above captioned case pursuant to any motion to coordinate or consolidate pre-trial proceedings per 28 U.S.C. Section 1407, or, in the alternative, 45 days after any such motion has been denied.

**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

Dated: August 19, 2005

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

IT IS SO ORDERED

Judge Marilyn H. Patel

Honorable Marilyn H. Patel
United States District Judge



SF/21630891.1

1    Bingham McCutchen LLP
      DAVID M. BALABANIAN (SBN 37368)
2    CHRISTOPHER B. HOCKETT (SBN 121539)
      JOY K. FUYUNO (SBN 193890)
3    Three Embarcadero Center
      San Francisco, CA  94111-4067
4    Telephone:  (415) 393-2000
      Facsimile:  (415) 393-2286
5

      Attorneys for Defendant
6    Intel Corporation

7

8                     UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                  SAN FRANCISCO DIVISION

11

12    DRESSED TO KILL CUSTOM DRAPERIES,       No. C-05-3272 (MHP)
      LLC and all others similarly situated,
13                             [PROPOSED] ORDER TO ENLARGE
             Plaintiff,                DEFENDANT'S RESPONSE DATE
14        v.

15    INTEL CORPORATION,

16              Defendant.

17

18         IT IS HEREBY ORDERED that Defendant Intel Corporation's response to

19    Plaintiff's complaint shall be due either 60 days after transfer of the above-captioned case

20    pursuant to any motion to coordinate or consolidate pre-trial proceedings per 28 U.S.C. Section

21    1407, or, in the alternative, 45 days after any such motion has been denied.

22

   DATED:  October ___, 2005         _____
23                                   Honorable Marilyn H. Patel

24

25

26

                                            Case No. C-05-3272 (MHP)

FILED

OCT - 5 2005

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  Bingham McCutchen LLP
   DAVID M. BALABANIAN (SBN 37368)
2  CHRISTOPHER B. HOCKETT (SBN 121539)
   JOY K. FUYUNO (SBN 193890)
3  Three Embarcadero Center
   San Francisco, CA  94111-4067
4  Telephone: (415) 393-2000
   Facsimile: (415) 393-2286
5
   Attorneys for Defendant
6  Intel Corporation

7

8               UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                SAN FRANCISCO DIVISION

11

12  DRESSED TO KILL CUSTOM DRAPERIES,          No. C-05-3272 (MHP)
    LLC and all others similarly situated,
13                                             [PROPOSED] ORDER TO ENLARGE
                  Plaintiff,                   DEFENDANT'S RESPONSE DATE
14         v.

15  INTEL CORPORATION,

16                Defendant.

17

18         IT IS HEREBY ORDERED that Defendant Intel Corporation's response to

19  Plaintiff's complaint shall be due either 60 days after transfer of the above-captioned case

20  pursuant to any motion to coordinate or consolidate pre-trial proceedings per 28 U.S.C. Section

21  1407, or, in the alternative, 45 days after any such motion has been denied.

22  DATED: October    , 2005

23                                      _____
                                        Honorable Marilyn H. Patel
24

25

26

                                                         Case No. C-05-3272 (MHP)

                          [PROPOSED] ORDER

SF/21636364.1

1    BINGHAM McCUTCHEN LLP
     DAVID M. BALABANIAN (SBN 37368)
2    CHRISTOPHER B. HOCKETT (SBN 121539)
     JOY K. FUYUNO (SBN 193890)
3    Three Embarcadero Center
     San Francisco, CA 94111-4067
4    Telephone: (415) 393-2000
     Facsimile: (415) 393-2286

5

6    Attorneys for Defendant
     Intel Corporation

7

8                UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10               SAN FRANCISCO DIVISION

11

12    DRESSED TO KILL DRAPERIES, LLC, on      No. C-05-3272-MHP
     behalf of itself and all others similarly situated,

13                                  **STIPULATION AND [PROPOSED]**
               Plaintiff,          **ORDER TO STAY DATES, EVENTS**

14                                  **AND DEADLINES PENDING THE**
       v.                             **OUTCOME OF THE MOTION TO**

15    INTEL CORPORATION, a Delaware          **TRANSFER AND COORDINATE OR**
     corporation,                          **CONSOLIDATE PURSUANT TO**

16                                  **28 U.S.C. § 1407**
               Defendant.

17

18

19            WHEREAS, on August 10, 2005, Plaintiff filed the instant action in the Northern

20    District of California ("Dressed to Kill Action");

21            WHEREAS, on or about July 11, 2005, the plaintiffs in *Brauch, et al. v. Intel*

22    *Corp.*, No. C 05-2743 (BZ) (N. D. Cal., filed July 5, 2005), a related matter, moved before the

23    Judicial Panel on Multi-District Litigation ("MDL"), to transfer and coordinate or consolidate for

24    pre-trial proceedings pursuant to 28 U.S.C. § 407 ("MDL Motion"), and the Dressed to Kill

25    Action has been identified as a related action subject to that motion;

26

1    WHEREAS, on or about September 29, 2005, Judge Patel issued a Related Case

2    Order relating this case to an earlier filed case assigned to her, and canceling or staying certain

3    but not all dates, events and deadlines in the action;

4    WHEREAS, to date, a decision has not been rendered on the MDL Motion;

5    WHEREAS, the outcome of the MDL Motion will impact significantly the

6    schedule of this case;

7    THEREFORE, IT IS HEREBY STIPULATED, pursuant to Civil Local Rule 6-2,

8    by and among counsel for Plaintiff Dressed to Kill, and counsel for Defendant Intel Corporation,

9    that any events, dates or deadlines set by the Local Rules or Federal Rules of Civil Procedure,

10   including the Local Rules for Alternative Dispute Resolution ("ADR Local Rules") and Federal

11   Rules of Civil Procedure 16 and 26, and any deadlines established in any case management order

12   applicable to this case should be stayed pending the outcome of the aforementioned MDL

13   Motion; and

14   IT IS FURTHER STIPULATED by the aforementioned parties that if a case

15   management conference is rescheduled by the Court, the parties shall adjust the dates for any

16   conference, disclosures or reports required by the Local Rules or Federal Rules of Civil

17   Procedure, including the ADR Local Rules and Federal Rules of Civil Procedure 16 and 26

18   accordingly.

19   IT IS HEREBY STIPULATED.

20   Dated:  November 1, 2005                     DRUMMOND & ASSOCIATES

21

22                              By:_____/s/ Donald F. Drummond_____
                                        Donald F. Drummond
                                        Attorneys for Plaintiff
23                                      Dressed to Kill Draperies, LLC

24

25

26

STIPULATION AND [PROPOSED] ORDER TO STAY DATES, EVENTS AND DEADLINES

1

Dated: November 1, 2005                    BINGHAM McCUTCHEN LLP

2

3                                          By:_____/s/ Joy K. Fuyuno_____
                                                      Joy K. Fuyuno
4                                                 Attorneys for Defendant
                                                   Intel Corporation
5

6        **[PROPOSED] ORDER TO STAY DATES, EVENTS AND DEADLINES**
         **PENDING THE OUTCOME OF THE MDL MOTION**

7

8            Any events, dates or deadlines set by the Local Rules or Federal Rules of Civil

9    Procedure, including the Local Rules for Alternative Dispute Resolution ("ADR Local Rules")

10   and Federal Rules of Civil Procedure 16 and 26, and any deadlines established in any case

11   management order applicable to this case are hereby stayed pending the outcome of the motion

12   to transfer and coordinate or consolidate pursuant to 28 U.S.C. § 1407 ("MDL Motion").

13           Upon the determination of the MDL Motion, if it is necessary for the Court to

14   reschedule a case management conference, the parties shall adjust the dates for any conference,

15   disclosures or reports required by the ADR Local Rules and Federal Rules of Civil Procedure 16

16   and 26 accordingly.

17           The parties shall notify the Clerk of Court within 10 days of the decision on the

18   MDL Motion.

19   **IT IS SO ORDERED.**

20   Dated:_____          _____
                                                   Honorable Marilyn H. Patel
21                                             United States District Court Judge

22

23

24

25

26

**FILED**

NOV - 8 2005

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1   BINGHAM McCUTCHEN LLP
    DAVID M. BALABANIAN (SBN 37368)
2   CHRISTOPHER B. HOCKETT (SBN 121539)
    JOY K. FUYUNO (SBN 193890)
3   Three Embarcadero Center
    San Francisco, CA  94111-4067
4   Telephone:  (415) 393-2000
    Facsimile:  (415) 393-2286
5
    Attorneys for Defendant
6   Intel Corporation

7

8                  UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11

12   DRESSED TO KILL DRAPERIES, LLC, on          No. C-05-3272-MHP
     behalf of itself and all others similarly situated,
13                                                **STIPULATION AND** [PROPOSED]
                                                  **ORDER TO STAY DATES, EVENTS**
14              Plaintiff,                        **AND DEADLINES PENDING THE**
                                                  **OUTCOME OF THE MOTION TO**
15        v.                                      **TRANSFER AND COORDINATE OR**
                                                  **CONSOLIDATE PURSUANT TO**
16   INTEL CORPORATION, a Delaware               **28 U.S.C. § 1407**
     corporation,
17
                Defendant.
18

19        WHEREAS, on August 10, 2005, Plaintiff filed the instant action in the Northern

20   District of California ("Dressed to Kill Action");

21        WHEREAS, on or about July 11, 2005, the plaintiffs in *Brauch, et al. v. Intel*

22   *Corp.*, No. C 05-2743 (BZ) (N. D. Cal., filed July 5, 2005), a related matter, moved before the

23   Judicial Panel on Multi-District Litigation ("MDL"), to transfer and coordinate or consolidate for

24   pre-trial proceedings pursuant to 28 U.S.C. § 407 ("MDL Motion"), and the Dressed to Kill

25   Action has been identified as a related action subject to that motion;

26

1    WHEREAS, on or about September 29, 2005, Judge Patel issued a Related Case
2    Order relating this case to an earlier filed case assigned to her, and canceling or staying certain
3    but not all dates, events and deadlines in the action;

4    WHEREAS, to date, a decision has not been rendered on the MDL Motion;

5    WHEREAS, the outcome of the MDL Motion will impact significantly the
6    schedule of this case;

7    THEREFORE, IT IS HEREBY STIPULATED, pursuant to Civil Local Rule 6-2,
8    by and among counsel for Plaintiff Dressed to Kill, and counsel for Defendant Intel Corporation,
9    that any events, dates or deadlines set by the Local Rules or Federal Rules of Civil Procedure,
10   including the Local Rules for Alternative Dispute Resolution ("ADR Local Rules") and Federal
11   Rules of Civil Procedure 16 and 26, and any deadlines established in any case management order
12   applicable to this case should be stayed pending the outcome of the aforementioned MDL
13   Motion; and

14   IT IS FURTHER STIPULATED by the aforementioned parties that if a case
15   management conference is rescheduled by the Court, the parties shall adjust the dates for any
16   conference, disclosures or reports required by the Local Rules or Federal Rules of Civil
17   Procedure, including the ADR Local Rules and Federal Rules of Civil Procedure 16 and 26
18   accordingly.

19   IT IS HEREBY STIPULATED.

20   Dated:  November 1, 2005

                                            DRUMMOND & ASSOCIATES
21

22                                          By:_____/s/ Donald F. Drummond_____
                                                    Donald F. Drummond
23                                                  Attorneys for Plaintiff
                                                    Dressed to Kill Draperies, LLC
24

25

26

STIPULATION AND [PROPOSED] ORDER TO STAY DATES, EVENTS AND DEADLINES

1

Dated: November 1, 2005

BINGHAM McCUTCHEN LLP

2

3

By: _____/s/ Joy K. Fuyuno_____

4

Joy K. Fuyuno
Attorneys for Defendant
Intel Corporation

5

6

## [PROPOSED] ORDER TO STAY DATES, EVENTS AND DEADLINES PENDING THE OUTCOME OF THE MDL MOTION

7

8     Any events, dates or deadlines set by the Local Rules or Federal Rules of Civil

9    Procedure, including the Local Rules for Alternative Dispute Resolution ("ADR Local Rules")

10   and Federal Rules of Civil Procedure 16 and 26, and any deadlines established in any case

11   management order applicable to this case are hereby stayed pending the outcome of the motion

12   to transfer and coordinate or consolidate pursuant to 28 U.S.C. § 1407 ("MDL Motion").

13     Upon the determination of the MDL Motion, if it is necessary for the Court to

14   reschedule a case management conference, the parties shall adjust the dates for any conference,

15   disclosures or reports required by the ADR Local Rules and Federal Rules of Civil Procedure 16

16   and 26 accordingly.

17     The parties shall notify the Clerk of Court within 10 days of the decision on the

18   MDL Motion.

19   **IT IS SO ORDERED.**

20   Dated:___11/7/05_____     _____

21     Honorable Marilyn H. Patel
   United States District Court Judge

22

23

24

25

26

STIPULATION AND [PROPOSED] ORDER TO STAY DATES, EVENTS AND DEADLINES

BINGHAM McCUTCHEN

Joy K. Fuyuno
Direct Phone:  (415) 393-2386
joy.fuyuno@bingham.com

November 17, 2005

**Via E-Filing**

The Honorable Marilyn H. Patel
United States District Court, Northern District of California
450 Golden Gate Avenue
Courtroom 15, 18th Floor
San Francisco, CA  94102

Bingham McCutchen LLP

Three Embarcadero Center

San Francisco, CA

94111-4067

415.393.2000

415.393.2286 fax

bingham.com

Boston

Hartford

London

Los Angeles

New York

Orange County

San Francisco

Silicon Valley

Tokyo

Walnut Creek

Washington

Re:   **(1) *Lipton v. Intel Corp.*, No.C-05-2669-MHP; (2) *Prohias v. Intel Corp.*, No. C-05-2699-MHP; (3) *Konieczka v. Intel Corp.*, No. C-05-2700-MHP; (4) *Niehaus v. Intel Corp.*, No. C-05-2720-MHP; (5) *Hamilton v. Intel Corp.*, No. C-05-2721-MHP; (6) *Brauch v. Intel Corp.*, No. C-05-2743-MHP; (7) *Baxley v. Intel Corp.*, No. C-05-2758-MHP; (8) *Frazier v. Intel Corp.*, No. C-05-2813-MHP; (9) *Dickerson v. Intel Corp.*, No. C-05-2818-MHP; (10) *The Harman Press v. Intel Corp.*, No. C-05-2823-MHP; (11) *Shanghai 1930 Restaurant v. Intel Corp.*, No. C-05-2830-MHP; (12) *Benjamin Allanoff v. Intel Corp.*, No. C-05-2834-MHP; (13) *Major League Softball, Inc. v. Intel Corp.*, No. C-05-2831-MHP; (14) *Lazio Family Products v. Intel Corp.*, No. C-05-2859-MHP; (15) *Law Offices Laurel Stanley & Wm. Cronin v. Intel Corp.*, No. C-05-2858-MHP; (16) *Walker v. Intel Corp.*,No. C-05-2882-MHP; (17) *Naigow v. Intel Corp.*, No. C-05-2898-MHP; (18) *Stoltz v. Intel Corp.*, No. C-05-2897-MHP; (19) *Hewson v. Intel Corp.*, No. C-05-2916-MHP; (20) *Lang v. Intel Corp.*, No. C-05-2957-MHP; (21) *Trotter-Vogel Realty, Inc. d/b/a Prudential California Realty v. Intel Corp.*, No. C-05-3028-MHP; (22) *Juskiewicz v. Intel Corp.*, No. C-05-3094-MHP; (23) *Uwakwe, d/b/a/ Tom Cyp Computers v. Intel Corp.*, No. C-05-3197-MHP; (24) *Juan v. Intel Corp.*, No. C-05-3271-MHP; (25) *Dressed to Kill Draperies, LLC, v. Intel Corp.*, No. C-05-3272-MHP; (26) *Kinder v. Intel Corp.*, No. C-05-3273-MHP; (27) *Rush v. Intel Corp.*, No. C-05-3277-MHP**

Dear Judge Patel:

Per the stipulations and orders entered in the above captioned cases,[1] I am writing to notify the Court of the MDL transfer order entered November 8, 2005, a copy of which is

---

[1] Orders were entered in most of the cases staying all dates and requiring notification to the Court of entry of the MDL decision.  Stipulations staying all dates pending the MDL decision were filed in all cases except one (*Dickerson*), in which the parties agreed to the terms of the stipulation but which was not yet signed when the MDL decision issued.

Hon. Marilyn H. Patel
November 17, 2005
Page 2

attached. The Judicial Panel on Multidistrict Litigation has ordered that the following 10 actions originally filed in the Northern District of California against Intel Corporation be centralized under 28 U.S.C. § 1407 in the District of Delaware as MDL 1717 (*In re Intel Corp. Microprocessor Antitrust Litigation*):

(1) *Lipton v. Intel Corp.*, No.C-05-2669-MHP; (2) *Prohias v. Intel Corp.*, No. C-05-2699-MHP; (3) *Konieczka v. Intel Corp.*, No. C-05-2700-MHP; (4) *Niehaus v. Intel Corp.*, No. C-05-2720-MHP; (5) *Hamilton v. Intel Corp.*, No. C-05-2721-MHP; (6) *Brauch v. Intel Corp.*, No. C-05-2743-MHP; (7) *Baxley v. Intel Corp.*, No. C-05-2758-MHP; (8) *Frazier v. Intel Corp.*, No. C-05-2813-MHP; (9) *Dickerson v. Intel Corp.*, No. C-05-2818-MHP; and (10) *The Harman Press v. Intel Corp.*, No. C-05-2823-MHP.

Tagalong notices have been filed for the following other 17 Northern District of California actions against Intel, for which conditional transfer orders should be issued soon:

(1) *Shanghai 1930 Restaurant v. Intel Corp.*, No. C-05 2830-MHP; (2) *Benjamin Allanoff v. Intel Corp.*, No. C-05-2834-MHP; (3) *Major League Softball, Inc. v. Intel Corp.*, No.C-05-2831-MHP; (4) *Lazio Family Products v. Intel Corp.*, No. C-05-2859-MHP; (5) *Law Offices Laurel Stanley & Wm. Cronin v. Intel Corp.*, No. C-05-2858-MHP; (6) *Walker v. Intel Corp.*, No. C-05-2882-MHP; (7) *Naigow v. Intel Corp.*, No. C-05-2898-MHP; (8) *Stoltz v. Intel Corp.*, No. C-05-2897-MHP; (9) *Hewson v. Intel Corp.*, No. C-05-2916-MHP; (10) *Lang v. Intel Corp.*, No. C-05-2957-MHP; (11) *Trotter-Vogel Realty, Inc. d/b/a Prudential California Realty v. Intel Corp.*, No. C-05-3028-MHP; (12) *Juskiewicz v. Intel Corp.*, No. C-05-3094-MHP; (13) *Uwakwe, d/b/a/ Tom Cyp Computers v. Intel Corp.*, No. C-05-3197-MHP; (14) *Juan v. Intel Corp.*, No. C-05-3271-MHP; (15) *Dressed to Kill Draperies, LLC, v. Intel Corp.*, No. C-05-3272-MHP; (16) *Kinder v. Intel Corp.*, No. C-05-3273-MHP; (17) *Rush v. Intel Corp.*, No. C-05-3277-MHP.

It is our understanding that the plaintiffs in these tagalong actions will not contest the conditional transfer orders.

Respectfully submitted,

*Joy K. Fuyuno*
Joy K. Fuyuno
Counsel for Intel Corporation

Attachment

Bingham McCutchen LLP
bingham.com

# UNITED STATES OF AMERICA
## JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

**CHAIRMAN:**
Judge Wm. Terrell Hodges
United States District Court
Middle District of Florida

**MEMBERS:**
Judge John F. Keenan
United States District Court
Southern District of New York

Judge D. Lowell Jensen
United States District Court
Northern District of California

Judge J. Frederick Motz
United States District Court
District of Maryland

Judge Robert L. Miller, Jr.
United States District Court
Northern District of Indiana

Judge Kathryn H. Vratil
United States District Court
District of Kansas

Judge David R. Hansen
United States Court of Appeals
Eighth Circuit

**DIRECT REPLY TO:**

Michael J. Beck
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C. 20002

Telephone: [202] 502-2800
Fax:        [202] 502-2888

http://www.jpml.uscourts.gov

November 8, 2005

TO INVOLVED COUNSEL

Re: MDL-1717 -- In re Intel Corp. Microprocessor Antitrust Litigation

(See Attached Schedule A of Order)

Dear Counsel:

    I am enclosing a copy of a Panel transfer order filed today in the above-captioned matter.

    The Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425 (2001), and specifically, Rules 1.1, 7.4 and 7.5, refer to "tag-along" actions. Please familiarize yourself with these Rules for your future reference. With regard to Rule 7.5, you need only provide this office with a copy of the complaint which you feel qualifies as a "tag-along" action and informally request that our "tag-along" procedures be utilized to transfer the action to the transferee district. If you have any questions regarding procedures used by the Panel, please telephone this office.

    Very truly,

Michael J. Beck
Clerk of the Panel

By_____
Deputy Clerk

Enclosure

JPML Form 35

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

*RELEASED FOR PUBLICATION*

NOV - 8 2005

FILED
CLERK'S OFFICE

*DOCKET NO. 1717*

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE INTEL CORP. MICROPROCESSOR ANTITRUST LITIGATION

*BEFORE WM. TERRELL HODGES, CHAIRMAN, JOHN F. KEENAN, D. LOWELL JENSEN, J. FREDERICK MOTZ, ROBERT L. MILLER, JR., KATHRYN H. VRATIL AND DAVID R. HANSEN, JUDGES OF THE PANEL*

### TRANSFER ORDER

This litigation currently consists of fourteen actions listed on the attached Schedule A and pending in two districts as follows: ten actions in the Northern District of California and four actions in the District of Delaware.[1] Pursuant to 28 U.S.C. § 1407, plaintiffs in one Northern District of California action originally moved for centralization of this docket in their California district, but they now favor selection of the District of Delaware as transferee forum. Plaintiff in one of the Delaware actions, Advanced Micro Devices, Inc. (AMD), has stated that it does not object to centralization in the District of Delaware, so long as the Panel orders that AMD's action be allowed to proceed on a separate track within the Section 1407 proceedings. All other responding parties, (i.e, plaintiffs in eight of the nine remaining California actions, the plaintiffs in the three remaining Delaware actions, common defendant Intel Corp., and plaintiffs in various District of Delaware and Northern and Southern District of California potential tag-along actions) support centralization without qualification. With but one exception, all of these additional respondents also support designation of the District of Delaware as transferee forum. The lone dissenter on this point is the plaintiff in a Southern District of California potential tag-along action, who favors centralization in his California district.

On the basis of the papers filed and hearing session held, the Panel finds that the actions in this litigation involve common questions of fact, and that centralization under Section 1407 in the District of Delaware will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. All actions involve allegations that common defendant Intel Corp. monopolized and unlawfully maintained a monopoly in the market for the microprocessing chips that serve as the "brains" of most modern computers. Centralization under Section 1407 is necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings (especially with respect

---

[1] The Panel has been notified of additional related actions recently filed in the Northern and Southern Districts of California, the District of Delaware, the Southern District of Florida, and the Eastern and Western Districts of Tennessee. In light of the Panel's disposition of this docket, these actions will be treated as potential tag-along actions. *See* Rules 7.4 and 7.5, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001).

- 2 -

to class certification matters), and conserve the resources of the parties, their counsel and the judiciary. Transfer under Section 1407 will have the salutary effect of placing all actions in this docket before a single judge who can formulate a pretrial program that: i) allows discovery with respect to any non-common issues to proceed concurrently with discovery on common issues, *In re Joseph F. Smith Patent Litigation*, 407 F.Supp. 1403, 1404 (J.P.M.L. 1976); and ii) ensures that pretrial proceedings will be conducted in a manner leading to a just and expeditious resolution of the actions to the benefit of not just some but all of the litigation's parties. We decline to grant AMD's request to issue specific instructions that could limit the discretion of the transferee court to structure this litigation as it sees fit. As Section 1407 proceedings evolve in the transferee district, AMD may wish to renew its argument that the nature of its claims and/or its status as a litigant would warrant separate tracking for its action within the centralized MDL-1717 proceedings. That argument is one to be addressed to the transferee court, however, and not to the Panel.

　　　In concluding that the District of Delaware is an appropriate forum for this docket, we observe that i) the district is an accessible location that is geographically convenient for many of this docket's litigants and counsel; ii) the district is well equipped with the resources that this complex antitrust docket is likely to require; and iii) the district is the near unanimous choice of all responding parties.

　　　IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the actions listed on Schedule A and pending outside the District of Delaware are transferred to that district and, with the consent of that court, assigned to the Honorable Joseph J. Farnan, Jr., for coordinated or consolidated pretrial proceedings with the actions pending there and listed on Schedule A.

　　　　　　　　　　　　　FOR THE PANEL:

　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　Wm. Terrell Hodges
　　　　　　　　　　　　　　　Chairman

# SCHEDULE A

<u>MDL-1717 -- In re Intel Corp. Microprocessor Antitrust Litigation</u>

### <u>Northern District of California</u>

*David E. Lipton, et al. v. Intel Corp.*, C.A. No. 3:05-2669
*Maria I. Prohias v. Intel Corp.*, C.A. No. 3:05-2699
*Ronald Konieczka v. Intel Corp.*, C.A. No. 3:05-2700
*Patricia M. Niehaus v. Intel Corp.*, C.A. No. 3:05-2720
*Steve J. Hamilton v. Intel Corp.*, C.A. No. 3:05-2721
*Michael Brauch, et al. v. Intel Corp.*, C.A. No. 3:05-2743
*Susan Baxley v. Intel Corp.*, C.A. No. 3:05-2758
*Huston Frazier, et al. v. Intel Corp.*, C.A. No. 3:05-2813
*Dwight E. Dickerson v. Intel Corp.*, C.A. No. 3:05-2818
*The Harman Press v. Intel Corp.*, C.A. No. 3:05-2823

### <u>District of Delaware</u>

*Advanced Micro Devices, Inc., et al. v. Intel Corp., et al.*, C.A. No. 1:05-441
*Jim Kidwell, et al. v. Intel Corp.*, C.A. No. 1:05-470
*Robert J. Rainwater, et al. v. Intel Corp.*, C.A. No. 1:05-473
*Matthew Kravitz, et al. v. Intel Corp.*, C.A. No. 1:05-476

FILED

JAN - 5 2006

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DRESSED TO KILL CUSTOM, | No. C 05-03272 MHP |
| Plaintiff(s), | **ORDER** |
| v. | |
| INTEL CORPORATION, | |
| Defendant(s). | |

This matter having been stayed pending other proceedings, and there being no further reason at this time to maintain the file as an open one for statistical purposes, the Clerk is instructed to submit a JS-6 Form to the Administrative Office.

Nothing contained in this minute entry shall be considered a dismissal or disposition of this action and, should further proceedings in this litigation become necessary or desirable, any party may initiate it in the same manner as if this entry had not been entered.

Dated:

MARILYN HALL PATEL
United States District Judge

OFFICE OF THE CLERK
**UNITED STATES DISTRICT COURT**
DISTRICT OF DELAWARE

FILED

06 JAN 10  PM 12: 17

Peter T. Dalleo
**CLERK**

LOCKBOX 18
844 NORTH KING STREET
BOGGS FEDERAL BUILDING
WILMINGTON, DELAWARE 19801
(302) 573-6170

December 29, 2005

Mr. Richard W. Wieking
Clerk, U.S. District Court
United States District Court
Phillip Burton
 United States Courthouse
450 Golden Gate Avenue, Box 36060
San Francisco, CA 94102-3434

RE:  **In Re Intel Corporation, Inc., Antitrust Litigation - MDL - 1717**
     CA 05-2830 (ND/CA) - **05-894 JJF (D/DE)**
     CA 05-2831 (ND/CA) - **05-895 JJF (D/DE)**
     CA 05-2834 (ND/CA) - **05-896 JJF (D/DE)**
     CA 05-2858 (ND/CA) - **05-897 JJF (D/DE)**
     CA 05-2859 (ND/CA) - **05-898 JJF (D/DE)**
     CA 05-2882 (ND/CA) - **05-899 JJF (D/DE)**
     CA 05-2897 (ND/CA) - **05-900 JJF (D/DE)**
     CA 05-2898 (ND/CA) - **05-901 JJF (D/DE)**
     CA 05-2916 (ND/CA) - **05-902 JJF (D/DE)**
     CA 05-2957 (ND/CA) - **05-903 JJF (D/DE)**
     CA 05-3028 (ND/CA) - **05-904 JJF (D/DE)**
     CA 05-3094 (ND/CA) - **05-905 JJF (D/DE)**
     CA 05-3197 (ND/CA) - **05-906 JJF (D/DE)**
     CA 05-3271 (ND/CA) - **05-907 JJF (D/DE)**
     CA 05-3272 (ND/CA) - **05-908 JJF (D/DE)**
     CA 05-3273 (ND/CA) - **05-909 JJF (D/DE)**
     CA 05-3277 (ND/CA) - **05-910 JJF (D/DE)**

Dear Mr. Wieking:

        In accordance with 28 U.S.C. § 1407, enclosed is a certified copy of the *Conditional Order of Transfer* issued by the Judicial Panel on Multidistrict Litigation which references the above-captioned case in your District. Kindly forward the complete original file, together with a certified copy of the docket sheet, to the District of Delaware at the following address:

Clerk, U.S. District Court
Federal Building, Lockbox 18
844 N. King St.
Wilmington, DE 19801

If our case file is maintained in electronic format in CM/ECF, please contact Elizabeth Strickler or Monica Mosley at 302-573-6170.

Sincerely,

Peter T. Dalleo, Clerk

By: __/s/_____

Monica Mosley
Deputy Clerk

Enc.
cc: Michael Beck, Clerk of Panel



A CERTIFIED TRUE COPY

DEC 2 2 2005

FILED
CLERK'S OFFICE

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

DEC - 6 2005

FILED
CLERK'S OFFICE

*DOCKET NO. 1717*

## *BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION*

## *IN RE INTEL CORP. MICROPROCESSOR ANTITRUST LITIGATION*

## *(SEE ATTACHED SCHEDULE)*

## *CONDITIONAL TRANSFER ORDER (CTO-1)*

On November 8, 2005, the Panel transferred ten civil actions to the United States District Court
for the District of Delaware for coordinated or consolidated pretrial proceedings pursuant to 28
U.S.C. § 1407. With the consent of that court, all such actions have been assigned to the
Honorable Joseph J. Farnan, Jr.

It appears that the actions on this conditional transfer order involve questions of fact which are
common to the actions previously transferred to the District of Delaware and assigned to Judge
Farnan.

Pursuant to Rule 7.4 of the <u>Rules of Procedure of the Judicial Panel on Multidistrict Litigation</u>,
199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the
District of Delaware for the reasons stated in the order of November 8, 2005, ___F.Supp.2d___
(J.P.M.L. 2005), and, with the consent of that court, assigned to the Honorable Joseph J. Farnan,
Jr.

This order does not become effective until it is filed in the Office of the Clerk of the United
States District Court for the District of Delaware. The transmittal of this order to said Clerk shall
be stayed fifteen (15) days from the entry thereof and if any party files a notice of opposition with
the Clerk of the Panel within this fifteen (15) day period, the stay will be continued until further
order of the Panel.

FOR THE PANEL:

*Michael J. Beck*

Michael J. Beck
Clerk of the Panel

Inasmuch as no objection is
pending at this time, the
stay is lifted.

DEC 2 2 2005

CLERK'S OFFICE
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

# SCHEDULE CTO-1 - TAG-ALONG ACTIONS
## DOCKET NO. 1717
## IN RE INTEL CORP. MICROPROCESSOR ANTITRUST LITIGATION

**DIST. DIV. C.A. #**          **CASE CAPTION**

CALIFORNIA NORTHERN
CAN 3  05-2830      Shanghai 1930 Restaurant Partners, L.P. v. Intel Corp.
CAN 3  05-2831      Major League Softball, Inc. v. Intel Corp.
CAN 3  05-2834      Benjamin Allanoff v. Intel Corp.
CAN 3  05-2858      Law Offices of Laurel Stanley, et al. v. Intel Corp.
CAN 3  05-2859      Lazio Family Products v. Intel Corp.
CAN 3  05-2882      Ian Walker v. Intel Corp.
CAN 3  05-2897      Kevin Stoltz v. Intel Corp.
CAN 3  05-2898      Peter Jon Naigo v. Intel Corp.
CAN 3  05-2916      Patrick J. Hewson v. Intel Corp.
CAN 3  05-2957      Lawrence Lang v. Intel Corp.
CAN 3  05-3028      Trotter-Vogel Realty, Inc. v. Intel Corp.
CAN 3  05-3094      Karol Juskiewicz v. Intel Corp.
CAN 3  05-3197      Athan Uwakwe v. Intel Corp.
CAN 3  05-3271      Jose Juan v. Intel Corp.
CAN 3  05-3272      Dressed to Kill Custom Draperies LLC v. Intel Corp.
CAN 3  05-3273      Tracy Kinder v. Intel Corp.
CAN 3  05-3277      Edward Rush v. Intel Corp.

CALIFORNIA SOUTHERN
CAS 3  05-1507      Justin Suarez v. Intel Corp.

FLORIDA SOUTHERN
FLS 1  05-22262     Nathaniel Schwartz v. Intel Corp.

KANSAS
~~KS   6  05-1303       Marvin D. Chance, Jr. v. Intel Corp., et al.~~ Opposed 12/21/05

TENNESSEE EASTERN
TNE 2  05-212       Andrew Armbrister, et al. v. Intel Corp.

TENNESSEE WESTERN
TNW 2  05-2605      Cory Wiles v. Intel Corp.

# INVOLVED COUNSEL LIST (CTO-1)
## DOCKET NO. 1717
## IN RE INTEL CORP. MICROPROCESSOR ANTITRUST LITIGATION

Mario N. Alioto
Trump, Alioto, Trump & Prescott
2280 Union Street
San Francisco, CA 94123

Daniel B. Allanoff
Meredith, Cohen, Greenfogel &
Skirnick, P.C.
117 South 17th Street
22nd Floor
Philadelphia, PA 19103

C. Donald Amamgbo
Amamgbo & Associates, PLC
1940 Embarcadero Cove
Oakland, CA 94606

Scott Ames
Serratore & Ames
9595 Wilshire Blvd.
Suite 201
Los Angeles, CA 90212

Russsell M. Aoki
Aoki Sakamoto Grant, LLP
One Convention Place, Suite 1525
701 Pike Street
Seattle, WA 98101

David Mark Balabanian
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA 94111-4067

Gordon Ball
Ball & Scott
550 W. Main Avenue
Bank of America Center
Suite 750
Knoxville, TN 37902-2567

Steve W. Berman
Hagens Berman Sobol Shapiro, LLP
1301 Fifth Avenue
Suite 2900
Seattle, WA 98101

David Boies
Straus & Boies, LLP
4041 University Drive, 5th Floor
Fairfax, VA 22030

Craig C. Corbitt
Zelle, Hofmann, Voelbel, Mason &
Gette, LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104

Robert W. Coykendall
Morris, Laing, Evans, Brock &
Kennedy, Chtd.
Old Town Square
300 North Mead
Suite 200
Wichita, KS 67202-2722

Donald F. Drummond
Drummond & Associates
One California Street
Suite 300
San Francisco, CA 94111

Jef Feibelman
Burch, Porter & Johnson, PLLC
130 N. Court Ave.
Memphis, TN 38103

Nancy L. Fineman
Cotchett, Pitre, Simon & McCarthy
San Francisco Airport Office Center
Suite 200
840 Malcolm Road
Burlingame, CA 94010

Barbara C. Frankland
Gunderson, Sharp & Walke, L.L.P.
4121 West 83rd Street
Suite 256
Prairie Village, KS 66208

Joy K. Fuyuno
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA 94111-4067

Harvey W. Gurland, Jr.
Duane Morris
200 South Biscayne Blvd.
Suite 3400
Miami, FL 33131

Lance A. Harke
Harke & Clasby LLP
155 South Miami Avenue
Suite 600
Miami, FL 33130

Christopher B. Hockett
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA 94111-4067

Jeffrey F. Keller
Law Offices of Jeffrey F. Keller
425 Second Street
Suite 500
San Francisco, CA 94107

Michael L. Kirby
Post, Kirby, Noonan & Sweat
701 B Street
Suite 1100
San Diego, CA 92101-3302

Jerry W. Laughlin
Rogers, Laughlin, Nunnally, Hood &
Crum
100 South Main Street
Greenville, TN 37743

Michael P. Lehmann
Furth Firm, LLP
225 Bush Street
Suite 1500
San Francisco, CA 94104-4249

Ali Oromchian
Finkelstein, Thompson & Loughran
601 Montgomery Street
Suite 665
San Francisco, CA 94111

Joseph M. Patane
Law Offices of Joseph Patane
2280 Union Street
San Francisco, CA 94123

Donald L. Perelman
Fine, Kaplan & Black, RPC
1835 Market Street
28th Floor
Philadelphia, PA 19103

Juden Justice Reed
Schubert & Reed, LLP
Two Embarcadero Center, Suite 1050
San Francisco, CA 94111

Randy R. Renick
Law Offices of Randy Renick
128 North Fair Oaks Ave.
Suite 204
Pasadena, CA 91103

Richard A. Ripley
Bingham Mccutchen
1120 20th Street, N.W.
Suite 800
Washington, DC 20036

INVOLVED COUNSEL LIST (CTO-1) MDL-1717

R. Alexander Saveri
Saveri & Saveri, Inc.
111 Pine Street
Suite 1700
San Francisco, CA 94111-5630

Francis O. Scarpulla
Law Offices of Francis O. Scarpulla
44 Montgomery Street
Suite 3400
San Francisco, CA 94104

Reginald Von Terrell
Terrell Law Group
223 25th Street
Richmond, CA 94804

Douglas G. Thompson, Jr.
Finkelstein, Thompson & Loughran
1055 Thomas Jefferson Street, N.W.
Suite 601
Washington, DC 20007

B. J. Wade
Glassman, Edwards, Wade & Wyatt, P.C.
26 North Second Street
Memphis, TN 38103

Edward A. Wallace
Wexler Law Firm
One North LaSalle Street
Suite 2000
Chicago, IL 60602

INVOLVED JUDGES LIST (CTO-1)
DOCKET NO. 1717
IN RE INTEL CORP. MICROPROCESSOR ANTITRUST LITIGATION

Hon. J. Daniel Breen
U.S. District Judge
345 U.S. Courthouse
111 South Highland Avenue
Jackson, TN 38301

Hon. J. Ronnie Greer
U.S. District Judge
United States District Court
220 West Depot Street
Suite 405
Greeneville, TN 37743

Hon. J. Thomas Marten
U.S. District Judge
232 U.S. Courthouse
401 North Market St.
Wichita, KS 67202

Hon. Jose E. Martinez
U.S. District Judge
Federal Courthouse Square
Third Floor
301 North Miami Avenue
Miami, FL 33128

Hon. Marilyn Hall Patel
U.S. District Judge
Phillip Burton U.S. Courthouse
Box 36060
450 Golden Gate Avenue
San Francisco, CA 94102-3661

Hon. Thomas J. Whelan
U.S. District Judge
3155 Edward J. Schwartz U.S. Courthouse
940 Front Street, Suite 3155
San Diego, CA 92101

**INVOLVED CLERKS LIST (CTO-1)**
**DOCKET NO. 1717**
**IN RE INTEL CORP. MICROPROCESSOR ANTITRUST LITIGATION**

Clarence Maddox, Clerk
Federal Courthouse Square
301 North Miami Avenue
Miami, FL 33128-7788

Patricia L. McNutt, Clerk
U.S. Courthouse
101 Summer Street, West
Greeneville, TN 37743

~~Ralph L. DeLoach, Clerk~~
~~204 U.S. Courthouse~~
~~401 N. Market Street~~
~~Wichita, KS 67202~~

Richard W. Wieking, Clerk
400-S Ronald V. Dellums
Federal Building
1301 Clay Street
Oakland, CA 94612-5212

Richard W. Wieking, Clerk
Phillip Burton U.S. Courthouse
Box 36060
450 Golden Gate Avenue
San Francisco, CA 94102-3489

Thomas M. Gould, Clerk
242 Clifford Davis Federal Building
167 North Main Street
Memphis, TN 38103

W. Samuel Hamrick, Jr., Clerk
4290 Edward J. Schwartz Federal Building
880 Front Street
San Diego, CA 92101-8900

**UNITED STATES DISTRICT COURT**

**Northern District of California**

**450 Golden Gate Avenue**

**San Francisco, California 94102**

_____

www.cand.uscourts.gov

Richard W. Wieking

Clerk

General Court Number

415.522.2000

January 11, 2006

United States District Court
for the District of Delaware
Lockbox 18
844 North King Street
Boggs Federal Building
Wilmington, Delaware 19801

RE:  **In Re Intel Corporation, Inc., Antitrust Litigation - MDL - 1717**

| CV 05-2830 MHP | **05-894 JJF (D/DE)** |
| CV 05-2831 MHP | **05-895 JJF (D/DE)** |
| CV 05-2834 MHP | **05-896 JJF (D/DE)** |
| CV 05-2858 MHP | **05-897 JJF (D/DE)** |
| CV 05-2859 MHP | **05-898 JJF (D/DE)** |
| CV 05-2882 MHP | **05-899 JJF (D/DE)** |
| CV 05-2897 MHP | **05-900 JJF (D/DE)** |
| CV 05-2898 MHP | **05-901 JJF (D/DE)** |
| CV 05-2916 MHP | **05-902 JJF (D/DE)** |
| CV 05-2957 MHP | **05-903 JJF (D/DE)** |
| CV 05-3028 MHP | **05-904 JJF (D/DE)** |
| CV 05-3094 MHP | **05-905 JJF (D/DE)** |
| CV 05-3197 MHP | **05-906 JJF (D/DE)** |
| CV 05-3271 MHP | **05-907 JJF (D/DE)** |
| CV 05-3272 MHP | **05-908 JJF (D/DE)** |
| CV 05-3273 MHP | **05-909 JJF (D/DE)** |
| CV 05-3277 MHP | **05-910 JJF (D/DE)** |

Dear Clerk,

Pursuant to an order transferring the above captioned cases to your court, transmitted herewith are:

(✔)  Certified copy of docket entries

(✔)  Certified copy of TRANSFERRAL ORDER

(✔)  Original case file documents

(✔)  Please be advised that the above entitled action was previously designated to the

Electronic Case Filing program. You can access electronically filed documents through PACER referencing the

Northern District of California case number at https://ecf.cand.uscourts.gov

Please acknowledge receipt of the above documents on the attached copy of this letter.

Sincerely,
RICHARD W. WIEKING, Clerk

by:  Gina Agustine-Rivas
Case Systems Administrator

Enclosures
Copies to counsel of record